UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| DARRELL K. SPENCER, Individually and On Behalf of All Other Persons Similarly Situated, and KENNETH KENDLY, : | |
| : | 12 Civ. 6323 (ALC) (AJP) |
| Plaintiffs, : | **REPORT AND RECOMMENDATION** |
| -against- : | |
| NO PARKING TODAY, INC. and CLAYTON THOMAS, : | |
| : | |
| Defendants. : | |
| : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Andrew L. Carter, Jr., United States District Judge:**

Plaintiff Darrell Spencer seeks to represent a class of current and former No Parking Today, Inc. employees in this action alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). (Dkt. No. 1: Compl.) Presently before the Court is Spencer's motion for FLSA collective action certification on an opt-in basis pursuant to 29 U.S.C. § 216 and NYLL class action certification on an opt-out basis pursuant to Fed. R. Civ. P. 23. (Dkt. No. 19: Notice of Motion.) For the reasons set forth below, Spencer's motion should be <u>GRANTED</u> as modified herein.

<u>**BACKGROUND**</u>

Defendant Clayton Thomas is the president of No Parking Today ("NPT"), a corporation providing parking services for Consolidated Edison, Inc. ("ConEd") in New York City and Westchester County. (Dkt. No. 1: Compl. ¶¶ 9, 26-27; Dkt. No. 13: Answer ¶¶ 9, 26-27; Dkt.

No. 21: Spencer Aff. ¶ 2; Thomas Dep. at 23-25.[1/])  Spencer has been employed as a parking assistant at NPT since October 2009.  (Compl. & Answer ¶ 28; Spencer Aff. ¶ 1; Thomas Dep. at 88.)[2/]

**Procedural History**

On August 17, 2012, Spencer filed a complaint on behalf of himself and a putative class of similarly situated NPT parking assistants alleging, inter alia, that NPT failed to pay overtime premium rates in violation of the FLSA and NYLL (Dkt. No. 1: Compl. ¶¶ 54-71),[3/] and failed to provide the wage and hour notice required under NYLL § 195.1 (Compl. ¶¶ 72-74).  Spencer also asserted individual retaliation claims under NYLL and the FLSA.  (Compl. ¶¶ 80-97.)[4/]

Defendants filed their Answer on November 14, 2012, asserting seventeen affirmative defenses.  (Answer ¶¶ 98-114.)  The parties engaged in discovery concerning NPT's challenged policies and Spencer's individual claims.  (See Dkt. No. 24: NPT Opp. Br. at 14.)  On December 18, 2012, Kenneth Kendly filed a consent to become a party plaintiff in this action.  (Dkt. No. 16: 12/18/12 Kendly Consent.)

---

[1/]    Excerpts of the Thomas Deposition are in Dkt. No. 25: Minnah-Donkoh Aff. Ex. A and Dkt. No. 22: Lipsky Aff. Ex. B.

[2/]    It is undisputed that parking assistants are considered NPT employees under the FLSA and NYLL.  (Compl. & Answer ¶¶ 12, 56, 81-82, 90-91; Thomas Dep. at 81.)

[3/]    As used herein, "straight time rate" refers to the hourly rate of payment for the first 40 hours of work per week, and "overtime premium rate" or "overtime rate" refers to an hourly rate of 150% the straight time rate, which the FLSA and NYLL dictate must be paid for hours in excess of 40 per week.  See 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  It is undisputed that all parking assistants are paid hourly.  (See Compl. ¶¶ 39-40; Dkt. No. 13: Answer ¶ 39; Dkt. No. 21: Spencer Aff. ¶ 9; Thomas Dep. at 56, 58, 62, 88-89; Dkt. No. 22: Lipsky Aff. Ex. C: Worker's Agreement.)

[4/]    Spencer alleges that when defendants learned Spencer intended to initiate this action, they retaliated by refusing to schedule him for future job assignments.  (Compl. ¶¶ 51-53.)

**Defendants' Alleged Wage And Hour Policies**[5]

      ConEd hires NPT to send its parking assistants to ConEd job sites, where they set up cones to reserve parking and divert traffic so ConEd work trucks can move in and out without traffic delays.  (Compl. & Answer ¶¶ 26, 29; Spencer Aff. ¶¶ 2, 4; Thomas Dep. at 23-24.)[6]  The ConEd-NPT contract states that NPT always will be paid a straight time rate; overtime will not be compensated.  (Thomas Dep. at 63, 78.)  Consequently, "if [NPT] ha[d] to pay overtime [to its employees] it definitely would put the company out of business like right off the bat."  (Id. at 78.) As such, NPT has a no overtime policy; all parking assistants sign a Worker's Agreement stating that they are limited to working forty hours per week and that NPT will not pay overtime premium rates. (Lipsky Aff. Ex. C: Worker's Agreement; see also Compl. ¶ 60; Spencer Aff. ¶ 16; Thomas Dep. at 53-56, 78.)

      In practice, NPT actually measures hours and compensates its parking assistants in two-week increments, so that for purposes of enforcing NPT's no overtime policy, parking assistants

---

[5]    The facts set forth in this Report and Recommendation are taken from the pleadings (Dkt. No. 1: Compl.; Dkt. No. 13: Answer), and the parties' briefs and submissions on this motion, which include portions of Thomas's deposition, Spencer's affirmation (Dkt. No. 21), NPT's Worker's Agreement (Dkt. No. 22: Lipsky Aff. Ex. C), and a list of NPT employees for the relevant period, which defendants produced during discovery (Lipsky Aff. Ex. D). Additionally, the Court also has considered certain evidence in the record of a prior action against NPT for unpaid overtime (Thomas Dep. at 8-11, discussing Owen v. No Parking Today, Inc., 08 Civ. 5626), which the Court finds relevant to the present litigation (the "Owen records").  (08 Civ. 5626, Dkt. No. 38: Goodstein Aff. & Exs. 35-37.)  The Court may consider this evidence for purposes of the present motion, regardless of its admissibility.  See, e.g., Flores v. Anjost Corp., 284 F.R.D. 112, 124 n.3 (S.D.N.Y. 2012) ("While there has not been any direct attention on this issue from the circuit courts of appeals, most district courts addressing this question have held that evidence need not be admissible under the Federal Rules of Evidence—or that the rules should not be applied strictly—on a motion for class certification." (collecting cases)).

[6]    It is undisputed that all parking assistants have the same duties.  (Compl. ¶ 29; Spencer Aff. ¶ 7; Thomas Dep. at 45, 88.)

are limited to eighty hours per two week period, as opposed to forty hours per one week period as stated in the Worker's Agreement.  (Compl. ¶¶ 42-43; Answer ¶ 42; Spencer Aff.  ¶ 12; Thomas Dep. at 89; see also Thomas Dep. at 78: "I have to ask my dispatchers over and over not to allow workers to work . . . over 80 hours every two weeks because that is not correct compensation for overtime.")[7]  So long as parking assistants do not exceed eighty hours in two weeks, there is no requirement that they work forty hours in each of the two weeks—they can work all eighty hours in the first week if they choose.  (Thomas Dep. at 79: "We try to base it [on] 80 hours every two weeks because there is not a specific day in the week.  A guy could start on Thursday, he could make 80 hours quick because the guy wants to fill up the hours from Thursday to Monday.")

NPT's dispatchers are responsible for distributing job assignments to the approximately seventy parking assistants.  (Compl. & Answer ¶ 36; Spencer Aff. ¶ 5; Thomas Dep. at 26-27, 58-59, 71.) While jobs are assigned primarily on the basis of each parking assistant's availability (Thomas Dep. at 26, 58-59, 73), dispatchers can and do dispatch whomever they want as much as they want (id. at 59).  Because parking assistants track their own hours and are not required to report them until the end of each two-week period, dispatchers have no way of knowing which parking assistants are approaching or exceeding the eighty-hour mark.  (Compl. ¶ 37; Spencer Aff. ¶ 6; Thomas Dep. at 65-67.)

Spencer alleges, and NPT's Thomas concedes, that parking assistants do in fact work more than forty hours per week.  (Compl. ¶ 41; Spencer Aff. ¶¶ 8, 15; Thomas Dep. at 61 ("when

---

[7]     This is further evidenced by NPT's policies for tracking and reporting hours.  (Thomas Dep. at 65-66: timesheets are used to track parking assistants' hours for a two-week or 15-day period; id. at 67: despite language in Worker's Agreement directing parking assistants to submit timesheets every week, in practice, the records are submitted every 15 days.)  It is undisputed that parking assistants are not paid weekly and usually are paid biweekly. (Answer ¶ 42; Spencer Aff. ¶ 11.)

a worker work and they work more than 40 hours, they work more than 40 hours because they voluntarily need that extra money to help them out, or they just want to work, they have nothing else to do"); id. at 63 ("at times it becomes over 40 hours"); id. at 79 ("[f]rom time to time guys slip up and work overtime").)  According to Spencer's allegations, parking assistants regularly work in excess of eighty hours per two weeks.  (Compl. ¶ 44; Spencer Aff. ¶¶ 12-13, 15, 23.)[8/]

NPT admittedly caps parking assistants' biweekly compensation at eighty hours. (Compl. ¶ 43; Spencer Aff.  ¶¶ 12, 15; Thomas Dep. at 89.)  For the hours worked in excess of eighty, NPT utilizes a roll over procedure; instead of paying the parking assistants for the excess hours in that pay period, NPT rolls the excess hours over into the next pay period, where they are counted toward that pay period's eighty-hour limit and compensated at a straight time rate.  (Compl. ¶ 44; Spencer Aff.  ¶¶ 11, 13, 15; Thomas Dep. at 61-63.)[9/]  According to NPT's Thomas, this practice allows parking assistants to ensure continued paychecks when future job assignments are uncertain: "[S]ome guys might put in as much hours as they could between the 1st and 15th because the 16th to the 30th they might not get any work at all, so they always have backed up hours coming

---

[8/]    The following Owen records provide support for this allegation: (1) Karl F. Owen worked 204 hours in a two-week pay period (Goodstein Aff. ¶ 89); (2) Paul Sinclair worked 87.25 hours in the two-week period ending November 15, 2006 (id. Ex. 35); (3) Santos Medina worked 105.5 hours between April 16 and April 30, 2008  (id. Ex. 36); (4) Locarth Copplin worked 101 hours between January 2 and January 16, 2008 (id. Ex. 37); (5) Jeffrey Brown worked 99 hours between January 2 and January 16, 2008 (id.); (6) Nyron Henry worked 82 hours between January 2 and January 16, 2008 (id.); (7) Paliscorpio Negron worked 86 hours between January 2 and January 16, 2008 (id.); (8) Neil Curtis worked 87 hours between January 2 and January 16, 2008 (id.); and (9) Dennis Danville worked 131.5 hours between January 2 and January 16, 2008 (id.).  (See also Goodstein Aff. ¶¶ 46-48, 88.)

[9/]    This procedure is reflected in two of the Owen records.  (See Goodstein Aff. Ex. 35: 11/15/06 Sinclair Timesheet (87.25 hours worked, and noting "Paid 80hrs" and "Balance 7 1/4"); id. Ex. 36: 4/30/08 Medina Timesheet (105.5 hours worked, and noting "46 rollover Hours As of 4/30/08").)

to them just because we are two weeks behind.  So he still has a check coming in from the 1st to 15th."  (Thomas Dep. at 61-62.)

In sum, through practice and procedures such as implementing an eighty-hour per two week time limit and utilizing the roll over procedure when that limit is exceeded, NPT has selectively enforced its no overtime policy in a way that allows parking assistants to work overtime <u>hours</u>, but precludes them from being paid overtime premium <u>rates</u>.  NPT unequivocally admits that it has never paid overtime premium wages to any parking assistant.  (Thomas Dep. at 63, 116; <u>see also</u> Compl. ¶ 45; Spencer Aff.  ¶¶ 15-18.)

It is undisputed that NPT's wage and hour policies apply uniformly to all parking assistants, including the above-described practices and procedures for dispatching job assignments, tracking and reporting hours, capping biweekly compensation at eighty hours, and paying straight time rates for all hours worked.

According to Spencer, NPT specifically designed these payroll practices to avoid informing parking assistants that they were entitled to overtime premium pay.  (Compl. ¶ 46.) Spencer alleges, and NPT largely admits, that NPT did not give parking assistants the wage and hour notice required under NYLL § 195.1.  (Compl. ¶ 50; Spencer Aff. ¶ 22; Thomas Dep. at 104-05.)

**Spencer's Motion For Conditional Collective Action And Rule 23 Class Certification**

Spencer moves for conditional certification of a collective action for the FLSA unpaid overtime claim, and Rule 23 class certification for the NYLL unpaid overtime and failure to provide the § 195.1 notice claims.[10/]   Spencer seeks the following relief:

> (1) conditional certification of this action as a representative collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"); (2) approval of the proposed FLSA notice of this action and the consent form; (3) production of names, last known mailing addresses, alternate addresses, telephone numbers, email addresses, last four digits of their Social Security numbers, and dates of employment of all Class Members; (4) posting of the Notice, along with the consent forms at each place of employment; (5) certifying this action as a class action under Rule 23(a) and (b)(3) for the New York Labor Law claims; and (6) appointing Class Counsel under Rule 23(g)(3).

(Dkt. No. 19: Notice of Motion.)  Spencer seeks collective action status under the FLSA for NPT parking assistants between August 13, 2009 and the present, and Rule 23 class action certification under NYLL for NPT parking assistants between August 13, 2006 and the present.  (Dkt. No. 22: Lipsky Aff. Ex. E: Proposed Notice.)

For the reasons set forth below, Spencer's motion should be <u>GRANTED</u> as modified herein.

## ANALYSIS

## I.   APPLICABLE LABOR LAW PROVISIONS

"The FLSA generally requires employers to provide overtime compensation for hours worked in excess of a prescribed work week," of forty hours.  <u>Ahern</u> v. <u>Cnty. of Nassau</u>, 118 F.3d 118, 119 (2d Cir. 1997); <u>accord</u> 29 U.S.C. § 207(a); <u>see also</u>, <u>e.g.</u>, <u>Jacobs</u> v. <u>N.Y. Foundling Hosp.</u>,

---

[10/]   Spencer "brought this suit as a collective action under the FLSA for Defendants' failure to pay overtime, and as a class action under Fed. R. Civ. P. 23 for Defendants' failure to pay overtime and provide the required notice under the NYLL."  (Dkt. No. 20: Spencer Br. at 1.)

577 F.3d 93, 96 (2d Cir. 2009).  "To establish an employer's liability under the FLSA for unpaid overtime, a plaintiff must prove: 1) that he performed work for which he was not properly compensated; and 2) that the employer had actual or constructive knowledge of that work."  Lewis v. Alert Ambulette Serv. Corp., No. 11-CV-442, 2012 WL 170049 at *4 (E.D.N.Y. Jan. 19, 2012).  "New York State labor regulations substantially incorporate and adopt the FLSA's overtime regulations.  As such, the same elements are required to prove plaintiffs' claim under New York labor law as under federal law."  Lewis v. Alert Ambulette Serv. Corp., 2012 WL 170049 at *5 (citation omitted); accord N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

Liability for unpaid overtime is not dependant on whether the employer required the overtime.  See, e.g., Chao v. Gotham Registry, Inc., 514 F.3d 280, 290 (2d Cir. 2008) ("[O]nce it is established that an employer has knowledge of a worker's overtime activities . . . , liability does not turn on whether the employee agreed to work overtime voluntarily or under duress."); Levy v. Verizon Info. Servs. Inc., Nos. 06 CV 1583, 06 CV 5056, 2007 WL 1747104 at *5 n.2 (E.D.N.Y. June 11, 2007) ("That these employees were not required to work overtime is of no moment.  Plaintiffs do not claim that overtime was required, but rather permitted (and unpaid), which is the correct liability standard under the FLSA.").

Nor can an employee's right to overtime premium wages be waived by a signed agreement not to work overtime.  See, e.g., Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 148 (2d Cir. 2008); Caserta v. Home Lines Agency, Inc., 273 F.2d 943, 946 (2d Cir. 1959); Underwood v. NMC Mortg. Corp., 245 F.R.D. 720, 723 (D. Kan. 2007) (rejecting argument that plaintiffs could not maintain collective action for unpaid overtime because they "signed a compensation policy which stated that they agreed not to work overtime," noting "employees cannot waive their right to overtime wages").

Additionally, NYLL § 195.1(a) states that employers are required to provide non-exempt employees with a written notice "at the time of hiring, and on or before February first of each subsequent year of the employee's employment," which must state, inter alia, "the regular hourly rate and overtime rate of pay."  N.Y. Labor Law § 195.1(a).  Templates are available from the commissioner.  N.Y. Labor Law § 195.1(b).

## II.    FLSA COLLECTIVE ACTION CERTIFICATION

Section 216(b) of the FLSA authorizes the use of collective actions:

> An action to recover the liability prescribed in [29 U.S.C. § 207] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).[11/]  Although certification is not required under the FLSA, courts utilize § 216 as "a useful 'case management' tool" for the purpose of facilitating notice to potentially "similarly situated" employees, informing them "of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  Myers v. Hertz Corp., 624 F.3d 537, 554-55 & n.10 (2d Cir. 2010) (quoting Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 174, 110 S. Ct. 482, 488 (1989)), cert. denied, 132 S. Ct. 368 (2011).

---

[11/]   See also, e.g., Amador v. Morgan Stanley & Co., 11 Civ. 4326, 2013 WL 494020 at *2 (S.D.N.Y. Feb. 7, 2013) ("Under the FLSA, employees may maintain collective actions to recover unpaid wages where the employees are 'similarly situated' and give consent to become a party in a writing filed with the court."); Sanchez v. Gansevoort Mgmt. Grp., Inc., 12 Civ. 75, 2013 WL 208909 at *1 (S.D.N.Y. Jan. 10, 2013); Arpi v. Sternbach Holdings, LLC, 12 Civ. 6764, 2012 WL 6200909 at *1 (S.D.N.Y. Dec. 10, 2012); Raniere v. Citigroup Inc., 827 F. Supp. 2d 294, 318 (S.D.N.Y. 2011) (Section 216(b) "provides for a private right of action to recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions.").

"Collective action treatment under section 216(b) reflects a policy in favor of judicial economy by which 'the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity.'" Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 2574742 at *8 (S.D.N.Y. June 29, 2012) (Carter, D.J.) (quoting Hoffmann-La Roche Inc. v. Sperling, 493 U.S. at 170, 110 S. Ct. at 486).

### A.   Legal Standards:  The Two-Steip Method For Collective Action Certification

Courts in the Second Circuit employ a two-step method for certification of collective actions under § 216(b).  Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010), cert. denied, 132 S. Ct. 368 (2011).[12/]

### 1.   The First Step

"The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010),

---

[12/]   Accord, e.g., Amador v. Morgan Stanley & Co., 11 Civ. 4326, 2013 WL 494020 at *2 (S.D.N.Y. Feb. 7, 2013); Limarvin v. Edo Rest. Corp., 11 Civ. 7356, 2013 WL 371571 at *1 (S.D.N.Y. Jan. 31, 2013) ("Courts generally determine the appropriateness of class certification at two stages: first, on the initial motion for conditional class certification, and second, after discovery."); Sanchez v. Gansevoort Mgmt. Grp., Inc., 12 Civ. 75, 2013 WL 208909 at *1 (S.D.N.Y. Jan. 10, 2013); Arpi v. Sternbach Holdings, LLC, 12 Civ. 6764, 2012 WL 6200909 at *1 (S.D.N.Y. Dec. 10, 2012); Kalloo v. Unlimited Mech. Co. of NY, Inc., No. 11-cv-6215, --- F. Supp. 2d ----, 2012 WL 6561446 at *1 (E.D.N.Y. Dec. 7, 2012); Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 2574742 at *9 (S.D.N.Y. June 29, 2012) (Carter, D.J.) ("The Second Circuit recently sanctioned the two-step formula commonly followed by the district courts in collective actions."); Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 401-02 (S.D.N.Y. 2012); Raniere v. Citigroup Inc., 827 F. Supp. 2d 294, 318 (S.D.N.Y. 2011).

cert. denied, 132 S. Ct. 368 (2011).[13/]  The purpose of the first step is "merely to determine whether 'similarly situated' plaintiffs do in fact exist."  Myers v. Hertz Corp., 624 F.3d at 555.  Thus, although "[n]either the FLSA nor its implementing regulations define 'similarly situated,'" to carry their burden at this stage, plaintiffs need only make "a '"modest factual showing"' that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."'"  Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 2574742 at *9 (S.D.N.Y. June 29, 2012) (Carter, D.J.) (quoting Myers v. Hertz Corp., 624 F.3d at 555 (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, D.J.))).[14/]

          "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,'"  Myers v. Hertz Corp., 624 F.3d at 555, but it may be satisfied by plaintiffs' "own pleadings, affidavits, and declarations, including any hearsay statements contained therein."  Morris v. Lettire Constr., Corp., 2012 WL 4320462 at *3 (citation omitted); accord, e.g., Moore v. Publicis Groupe SA, 2012 WL 2574742 at *9.[15/]  "During this initial step, the court does not resolve factual disputes,

---

[13/]     Accord, e.g., Amador v. Morgan Stanley & Co., 11 Civ. 4326, 2013 WL 494020 at *2 (S.D.N.Y. Feb. 7, 2013); Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012); Raniere v. Citigroup Inc., 827 F. Supp. 2d 294, 318-19 (S.D.N.Y. 2011).

[14/]     Accord, e.g., Amador v. Morgan Stanley & Co., 2013 WL 494020 at *2; Sanchez v. Gansevoort Mgmt. Grp., Inc., 12 Civ. 75, 2013 WL 208909 at *1 (S.D.N.Y. Jan. 10, 2013) (plaintiffs bear a "light burden" at the first stage); Arpi v. Sternbach Holdings, LLC, 12 Civ. 6764, 2012 WL 6200909 at *1 (S.D.N.Y. Dec. 10, 2012); Kalloo v. Unlimited Mech. Co. of NY, Inc., No. 11-cv-6215, --- F. Supp. 2d ----, 2012 WL 6561446 at *2 (E.D.N.Y. Dec. 7, 2012) ("Plaintiffs' burden is minimal because the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second certification stage."); Morris v. Lettire Constr., Corp., 12 Civ. 0043, --- F. Supp. 2d ----, 2012 WL 4320462 at *3 (S.D.N.Y. Sept. 18, 2012) ("The plaintiff's burden at the first stage is 'very low.'"); Winfield v. Citibank, N.A., 843 F. Supp. 2d at 402.

[15/]     See also, e.g., Amador v. Morgan Stanley & Co., 2013 WL 494020 at *2-3 ("'Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the (continued...)

decide substantive issues going to the ultimate merits, or make credibility determinations." <u>Moore</u>

v. <u>Publicis Groupe SA</u>, 2012 WL 2574742 at *9 (quotations omitted).[16/]

   "If the plaintiffs demonstrate that 'similarly situated' employees exist, the court may

conditionally certify the class, order that appropriate notice be provided to the putative class

members, and the action should continue as a 'collective action throughout the discovery process.'"

<u>Moore</u> v. <u>Publicis Groupe SA</u>, 2012 WL 2574742 at *9; <u>accord</u>, <u>e.g.</u>, <u>Winfield</u> v. <u>Citibank, N.A.</u>,

843 F. Supp. 2d at 402.  "Because the standard at the first stage is 'fairly lenient,' courts applying it

'typically grant[] conditional certification.'" <u>Amador</u> v. <u>Morgan Stanley & Co.</u>, 2013 WL 494020

---

[15/]  (...continued)
affidavits and declarations of other potential class members.'  Although 'unsupported assertions' are insufficient, the Second Circuit has emphasized that the standard of proof should remain 'low' because 'the purpose of this first stage is merely to determine <u>whether</u> "similarly situated" plaintiffs do in fact exist.'" (citation omitted)); <u>Hamadou</u> v. <u>Hess Corp.</u>, 12 Civ. 0250, --- F. Supp. 2d ----, 2013 WL 164009 at *11 (S.D.N.Y. Jan. 16, 2013) ("In fact, 'courts in this Circuit regularly rely on [hearsay] evidence to determine the propriety of sending a collective action notice.'  This is to be expected, since 'the initial class certification determination must be made on preliminary documents such as pleadings and affidavits, which necessarily contain unproved allegations.'" (citation omitted)); <u>Sanchez</u> v. <u>Gansevoort Mgmt. Grp., Inc.</u>, 2013 WL 208909 at *1; <u>Arpi</u> v. <u>Sternbach Holdings, LLC</u>, 2012 WL 6200909 at *1; <u>Winfield</u> v. <u>Citibank, N.A.</u>, 843 F. Supp. 2d at 402-03 ("On a motion for conditional certification 'courts in this Circuit regularly rely on [hearsay] evidence to determine the propriety of sending a collective action notice.'  That approach is consistent with the purpose of conditional certification which is only a preliminary determination as to whether there is a sufficient showing to warrant notice being sent to the purported collective class to allow members to opt-in to the lawsuit." (citations omitted)); <u>Raniere</u> v. <u>Citigroup Inc.</u>, 827 F. Supp. 2d at 319 ("At this initial step, Plaintiffs need only provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.' . . . In some cases, 'it may be appropriate . . . to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' substantial allegations that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy.'").

[16/]  <u>See also</u>, <u>e.g.</u>, <u>Limarvin</u> v. <u>Edo Rest. Corp.</u>, 11 Civ. 7356, 2013 WL 371571 at *1 (S.D.N.Y. Jan. 31, 2013); <u>Kalloo</u> v. <u>Unlimited Mech. Co. of NY, Inc.</u>, 2012 WL 6561446 at *3 ("[A]rguments about credibility or the weight of the evidence . . . are out of place in a conditional certification motion."); <u>Morris</u> v. <u>Lettire Constr., Corp.</u>, 2012 WL 4320462 at *3 ("[T]he court does 'not weigh the merits' of the plaintiff's underlying claims.  Nor does the court resolve factual disputes or evaluate credibility." (citation omitted)).

at *3; accord, e.g., Fang v. Zhuang, No. 10-CV-1290, 2010 WL 5261197 at *2 (E.D.N.Y. Dec. 1, 2010).

        The first-step standard applies to certification applications up to the completion of discovery, regardless of whether the parties have already engaged in substantial discovery practice. See, e.g., Amador v. Morgan Stanley & Co., 2013 WL 494020 at *4 ("[T]he overwhelming case law in this Circuit clearly holds that 'a heightened standard is not appropriate during the first stage of the conditional certification process and should only be applied once the entirety of discovery has been completed.'" (citing cases)); Moore v. Publicis Groupe SA, 2012 WL 2574742 at *11 (applying first-step standard where "a large amount of discovery has been conducted, [but] discovery remains incomplete"); Winfield v. Citibank, N.A., 843 F. Supp. 2d at 402 n.3 ("[T]he case law is clear that a heightened standard is not appropriate during the first stage of the conditional certification process and should only be applied once the entirety of discovery has been completed." (citing cases)).

**2.**    **The Second Step**

        "The second step is applied after discovery is complete." Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 2574742 at *9 (S.D.N.Y. June 29, 2012) (Carter, D.J.).  During the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010), cert. denied, 132 S. Ct. 368 (2011); accord, e.g., Moore v. Publicis Groupe SA, 2012 WL 2574742 at *9 ("The district court will examine the record and the opt-in plaintiffs and will determine whether they

are in fact similarly situated to the named plaintiffs.").[17/]  "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers v. Hertz Corp., 624 F.3d at 555.[18/]  "This second stage inquiry is more stringent because the court 'is able to examine whether the actual plaintiffs brought into the case are similarly situated.'" Moore v. Publicis Groupe SA, 2012 WL 2574742 at *9; accord, e.g., Raniere v. Citigroup Inc., 827 F. Supp. 2d at 320.

### B.   Spencer Has Made A Sufficient Showing At The First Step That He And Potential Opt-In Plaintiffs Are Similarly Situated

Spencer seeks conditional certification to proceed on behalf of himself and current and former parking assistants employed by NPT between August 13, 2009 and the present.  (See page 7 above.)  Spencer alleges that he and the potential opt-in plaintiffs are similarly situated in that they share the same job responsibilities and are subject to the same policies and practices, including

---

[17/]   Accord, e.g., Amador v. Morgan Stanley & Co., 11 Civ. 4326, 2013 WL 494020 at *4 (S.D.N.Y. Feb. 7, 2013); Kalloo v. Unlimited Mech. Co. of NY, Inc., No. 11-cv-6215, --- F. Supp. 2d ----, 2012 WL 6561446 at *1 (E.D.N.Y. Dec. 7, 2012) ("At the second step, after discovery, a court examines the record and again makes a factual finding regarding the similarly situated requirement."); Morris v. Lettire Constr., Corp., 12 Civ. 0043, --- F. Supp. 2d ----, 2012 WL 4320462 at *3 (S.D.N.Y. Sept. 18, 2012) ("During the second stage, which often occurs after the close of discovery, the court applies increased scrutiny to determine whether the opt-in plaintiffs are in fact 'similarly situated' to the named plaintiff, such that a collective action should proceed."); Raniere v. Citigroup Inc., 827 F. Supp. 2d 294, 320 (S.D.N.Y. 2011).

[18/]   Accord, e.g., Amador v. Morgan Stanley & Co., 2013 WL 494020 at *4; Limarvin v. Edo Rest. Corp., 11 Civ. 7356, 2013 WL 371571 at *1 (S.D.N.Y. Jan. 31, 2013); Sanchez v. Gansevoort Mgmt. Grp., Inc., 12 Civ. 75, 2013 WL 208909 at *1 (S.D.N.Y. Jan. 10, 2013) ("At the second step, defendants have the opportunity to move for decertification if, after additional discovery, the record shows that the opt-in plaintiffs are not, in fact, similarly situated to the named plaintiff(s)."); Arpi v. Sternbach Holdings, LLC, 12 Civ. 6764, 2012 WL 6200909 at *1 (S.D.N.Y. Dec. 10, 2012); Morris v. Lettire Constr., Corp., 2012 WL 4320462 at *3; Raniere v. Citigroup Inc., 827 F. Supp. 2d 294, 320 (S.D.N.Y. 2011).

in particular NPT's policy not to pay premium overtime rates to parking assistants when they work more than forty hours per week, in violation of the FLSA.  (See pages 3-6 above.)  At this preliminary stage, Spencer has satisfied his minimal burden of demonstrating that he is similarly situated to potential opt-in plaintiffs and that they were subject to a common unlawful policy.

It is undisputed that Spencer has the same job responsibilities as other NPT parking assistants.  (See page 3 n.6 above.)  Spencer states that he regularly worked more than forty hours per week but was not paid overtime as a consequence of NPT's policy to limit biweekly compensation to eighty hours of straight time pay, and to roll over any excess hours into the next pay period.  (See pages 3-6 above.)  Spencer asserts that, through observations and conversations, he has knowledge of at least seventy-five other parking assistants who worked more than forty hours per week but were not paid overtime as a result of the same NPT policies and practices.  (Dkt. No. 21: Spencer Aff. ¶¶ 15, 23.)  Spencer names six NPT employees with whom he allegedly spoke about these policies.  (Spencer Aff. ¶¶ 9, 15, 23.)[19]

Courts routinely find comparable allegations sufficient to satisfy a plaintiff's burden at the conditional certification phase.  See, e.g., Sanchez v. Gansevoort Mgmt. Grp., Inc., 12 Civ. 75, 2013 WL 208909 at *1 (S.D.N.Y. Jan. 10, 2013) ("In the affidavit, [plaintiff] swears to have observed 'other employees who performed the same job duties that [plaintiff] performed.' [Plaintiff] also swears to have knowledge that those other employees worked more than forty hours per week but were not separately paid an overtime premium.  Because the pleadings and the affidavit, taken

---

[19]    It is inconsequential that Spencer provides only the first name (Spencer Aff. ¶ 23) of one of the six employees.  See, e.g., Morris v. Lettire Constr., Corp., 12 Civ. 0043, --- F. Supp. 2d ----, 2012 WL 4320462 at *4 n.3 (S.D.N.Y. Sept. 18, 2012) ("[F]irst names suffice at the notice stage.").

together, suggest a common policy of failing to pay required overtime premiums, that showing suffices for conditional certification." (citations omitted)); Arpi v. Sternbach Holdings, LLC, 12 Civ. 6764, 2012 WL 6200909 at *1 (S.D.N.Y. Dec. 10, 2012) ("[P]laintiff[s] claim to have personally observed other employees who did similar work to them.  They also claim to have seen other employees suffer at the hands of defendants from the same unlawful practices at issue in this complaint.  That showing suffices for conditional certification." (citations omitted)); Kalloo v. Unlimited Mech. Co. of NY, Inc., No. 11-cv-6215, --- F. Supp. 2d ----, 2012 WL 6561446 at *2 (E.D.N.Y. Dec. 7, 2012) ("Plaintiffs' evidence satisfies the minimal burden of the similarly situated requirement.  The three declarations each establish that the plaintiffs heard their co-workers talk about not being paid lawful wages or appropriate overtime."); Morris v. Lettire Constr., Corp., 2012 WL 4320462 at *4 ("In their declarations, plaintiffs personally identify five other laborers who were subject to the same alleged policy.").[20]

---

[20]    See also, e.g., Lewis v. Alert Ambulance Serv. Corp., No. 11-CV-442, 2012 WL 170049 at *7 (E.D.N.Y. Jan. 19, 2012) ("It is sufficient for conditional certification that plaintiffs attest to knowledge of similarly situated co-workers or complain of a company-wide policy."); Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 126-27 (S.D.N.Y. 2011); Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 386 n.6 (E.D.N.Y. 2010) ("Courts regularly grant motions for approval of a collection action 'based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees.'"); Zivali v. AT & T Mobility LLC, 646 F. Supp. 2d 658, 662 (S.D.N.Y. 2009) ("Even leaving aside the fact that employees would generally become familiar through the ordinary course of employment with how the company functions and what its policies are, the factual showing underlying the Court's determination here 'is not based solely on [plaintniffs'] assertions, but rather is sufficiently made out through the deposition testimony.'" (citations omitted)); Cano v. Four M Food Corp., No. 08-CV-3005, 2009 WL 5710143 at *5 (E.D.N.Y. Feb. 3, 2009) ("[T]he named plaintiffs stated in their affidavits that they were continually denied proper compensation for the hours they worked in excess of forty (40) hours per week.  Plaintiffs further stated that they knew personally that many of their former coworkers, many of whom they listed by name, were also not properly compensated for their overtime. . . . Finally, the personal knowledge of plaintiffs as to defendants' failure to pay

(continued...)

Thomas's unequivocal admission during his deposition that it is NPT's policy not to pay overtime wages to parking assistants for hours worked in excess of forty hours per week further bolsters conditional certification. See also, e.g., Hamadou v. Hess Corp., 12 Civ. 0250, --- F. Supp. 2d ----, 2013 WL 164009 at *12 (S.D.N.Y. Jan. 16, 2013) ("Courts have granted conditional certification for employees at other locations owned by a defendant based on a manager's alleged statements regarding a common unlawful policy or practice, without any further inquiry into the credibility of those statements.").

NPT argues that Spencer has failed to carry his burden because: (i) three of the five individuals named in Spencer's affidavit are supervisors who may be exempt from FLSA overtime requirements (Dkt. No. 24: NPT Opp. Br. at 5-6); and (ii) Spencer has not offered sufficient evidence of a widespread practice of parking assistants working more than forty hours per week without receiving overtime pay, since all parking assistants sign written agreements not to work more than forty hours per week (id. at 6), Spencer has not submitted a single parking assistant's affidavit swearing to have worked more than forty hours per week without overtime pay (id. at 6), and although Thomas testified that parking assistants are not paid overtime for hours worked in excess of forty hours per week, his testimony does not amount to "an admission of a widespread

---

[20]/   (...continued)
overtime wages to others was based in part on conversations with other co-workers." (citations omitted)); Toure v. Cent. Parking Sys. of N.Y., 05 Civ. 5237, 2007 WL 2872455 at *3 (S.D.N.Y. Sept. 28, 2007); Mentor v. Imperial Parking Sys., Inc., 246 F.R.D. 178, 181 (S.D.N.Y. 2007); Wraga v. Marble Lite, Inc., No. 05-CV-5038, 2006 WL 2443554 at *2 (E.D.N.Y. Aug. 22, 2006); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91, 95-96 (E.D.N.Y. 2003).

practice of parking assistants working more than the permissible maximum of 40 hours per week, as set forth in the Worker's Agreements" (id. at 6-7).[21/]

        As to NPT's argument that three of the five individuals named in Spencer's affidavit are not parking assistants but rather are FLSA-exempt supervisors, this argument is premature, as Spencer seeks only to represent similarly situated parking assistants in this collective action. (See page 7 above.) Should it turn out that anyone who opts in to the collective action is not sufficiently similarly situated, NPT can move to decertify the action at the close of discovery. See, e.g., Arpi v. Sternbach Holdings, LLC, 2012 WL 6200909 at *1 ("Should facts develop after additional discovery suggesting that any opt-in plaintiffs are not similarly situated, defendants may move for decertification at that time."); Morris v. Lettire Constr., Corp., 2012 WL 4320462 at *5 ("The accuracy of the parties' competing views will be tested through discovery and may be raised before the Court on a motion to decertify the class after the close of discovery. At this stage, however, defendants' equally untested declarations do not undermine plaintiffs' showing."); Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 2574742 at *11 (S.D.N.Y. June 29, 2012) (Carter, D.J.); Raniere v. Citigroup Inc., 827 F. Supp. 2d 294, 324 (S.D.N.Y. 2011) ("Such arguments are best suited to the second certification stage, where, on a fuller record, the court will examine whether the plaintiffs and opt-ins are in fact similarly situated.").[22/]

_____

[21/]   NPT appears not to dispute the claim that it is NPT's policy not to pay any overtime, and indeed Thomas explicitly admitted as much during his deposition. (See page 6 above.) Rather, NPT's challenge is to the claim that there were parking assistants who in fact worked more than forty hours per week and thus were entitled to overtime wages that NPT did not pay because of its policy to roll over the hours.

[22/]   Further, even if the identified individuals are supervisors now, they may have been parking assistants at some point during the relevant period. (See Thomas Dep. at 121: identifying
                                                                                        (continued...)

As to NPT's argument that Spencer's evidentiary proffer is insufficient without affidavits from other employees, the case law is clear that the allegations in the complaint, combined with Spencer's affidavit and the other discovery submissions, are sufficient to carry his burden at this preliminary stage.  (See cases cited at pages 15-16 & n.20 above.)

NPT's Worker's Agreement providing that parking assistants should not work overtime does not preclude collective action certification.  See, e.g., Amador v. Morgan Stanley & Co., 11 Civ. 4326, 2013 WL 494020 at *6 (S.D.N.Y. Feb. 7, 2013) ("Thus, 'the existence of a formal policy . . . should not immunize the defendant where[, as here,] the plaintiffs have presented evidence that this policy was commonly violated in practice.'"); Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 405 (S.D.N.Y. 2012) ("The plaintiffs here concede that the defendant's policies of strictly limiting the number of overtime hours that could be accrued . . . were lawful on their face. . . . However, they present evidence that these policies resulted, in practice, in a pattern of FLSA violations. . . .  This evidence, in combination with the plaintiffs' and declarants' testimony that their managers implemented the defendant's overtime reduction policy in an unlawful manner, is sufficient to make a modest factual showing that the plaintiffs were victims of an unlawful plan or practice . . . .")[23]/

---

[22]/     (...continued)
          at least one supervisor who previously worked as a parking assistant.)  The Court declines to resolve such factual disputes at the conditional certification stage.  See, e.g., Sanchez v. Gansevoort Mgmt. Grp., Inc., 2013 WL 208909 at *1 n.1 ("[T]o the extent [defendant] contradicts statements sworn to by the plaintiffs, the Court will grant the plaintiffs the benefit of the doubt given the posture of this motion."); Arpi v. Sternbach Holdings, LLC, 2012 WL 6200909 at *1 n.1.

[23]/     Accord, e.g., Levy v. Verizon Info. Servs. Inc., Nos. 06 CV 1583, 06 CV 5056, 2007 WL 1747104 at *5 n.2 (E.D.N.Y. June 11, 2007) ("That these employees were not required to
                                                                                        (continued...)

Further, it is sufficient to show that parking assistants all were subject to the same unlawful policy, regardless of how "widespread" the effects.  See, e.g., Amador v. Morgan Stanley & Co., 2013 WL 494020 at *8 ("The question for the Court is not whether Defendants paid any overtime to some of the Plaintiffs but whether they paid all overtime or had a policy of limiting the amount of overtime pay—through the explicit or implicit actions of their managers and supervisors—that CSAs were entitled to receive."); Winfield v. Citibank, N.A., 843 F. Supp. 2d at 404 ("[T]he relevant 'issue . . . is not whether Plaintiffs and [potential opt-in plaintiffs] were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week.'"); Raniere v. Citigroup Inc., 827 F. Supp. 2d at 323; Summa v. Hofstra Univ., 715 F. Supp. 2d at 386 (plaintiffs satisfied initial burden where they "averred that they were subject to [defendant's] stated policies regarding rates of pay, that Defendant did not enforce these policies and thus permitted them to work concurrently in more than one position without paying them . . . overtime compensation" and they "identified seven other students who were likewise denied appropriate compensation").

Thomas's testimony regarding NPT's policies and practices, coupled with the testimony that these policies are applied uniformly to all parking assistants (see pages 3-6 above),

_____

23/    (...continued)
       work overtime is of no moment.  Plaintiffs do not claim that overtime was required, but rather permitted (and unpaid), which is the correct liability standard under the FLSA."); Underwood v. NMC Mortg. Corp., 245 F.R.D. 720, 723 (D. Kan. 2007) (rejecting argument that plaintiffs could not maintain collective action for unpaid overtime because they "signed a compensation policy which stated that they agreed not to work overtime," noting "that employees cannot waive their right to overtime wages"); see also, e.g., Zubair v. EnTech Eng'g P.C., 715 F. Supp. 2d 541, 541 (S.D.N.Y. 2010) ("As a general rule, the FLSA overtime provisions are applicable 'even though there may be a custom, contract, or agreement not to pay for the time so spent.'").

is sufficient to support collective action certification at the first step. See, e.g., Lewis v. Nat'l Fin. Sys., Inc., No. 06-1308, 2007 WL 2455130 at *4 (E.D.N.Y. Aug. 23, 2007) (Defendant "points to the fact that it does not concede the existence of a common plan and challenges the sufficiency of the evidence that there are other individuals similarly situated to Plaintiffs.  Whether or not [defendant] concedes the existence of a common plan, the testimony of its 30(b)(6) witnesses provides ample support for this Court to conclude for present purposes and on the information thus far furnished that there was a common policy and that there are other individuals similarly situated to Plaintiffs.").[24/]

Accordingly, plaintiff Spencer's motion for collective action certification under the FLSA should be GRANTED.

## III.   NYLL RULE 23 CLASS ACTION

"Unlike the FLSA, the NYLL does provide a vehicle for plaintiffs to pursue class action claims under Rule 23" of the Federal Rules of Civil Procedure. Duarte v. Tri-State Physical Med. & Rehab., P.C., 11 Civ. 3765, 2012 WL 2847741 at *6 (S.D.N.Y. July 11, 2012).

### A.   Class Definition

Spencer seeks class certification under Rule 23 for two of his NYLL claims, namely, NPT's alleged failure to pay overtime and provide the required § 195.1 notice in violation of the

---

[24/]   See also, e.g., Morris v. Lettire Constr., Corp., 2012 WL 4320462 at *5 ("[P]laintiffs have adduced corroborating evidence of a company-wide policy.  In his declaration, [the named plaintiff] alleges that he complained to [the individual defendant] about the alleged lack of overtime payments.  According to [the named plaintiff], [the individual defendant] responded, '[T]hat's not how we do it,' suggesting to [the named plaintiff] that the Company does not pay overtime premiums at any of its sites.  Given [the individual defendant's] stature as the President and Chief Executive Officer of [the defendant] Corporation, his alleged admission to [the named plaintiff] supports plaintiffs' minimal burden at this stage." (record citations omitted)).

NYLL.  (Dkt. No. 20: Spencer Br. at 1, 17.)  Spencer's proposed class is defined as: "Current and former employees of No Parking Today, Inc. who are or were employed as a 'parking assistant' or 'reserve parker' at any time between August 13, 2006 and the present."  (Spencer Br. at 2.)

"A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993).[25/]  "This Court has the discretion to create subclasses it deems appropriate."  Flores v. Anjost Corp., 284 F.R.D. at 125; Fed. R. Civ. P. 23(c)(5).[26/]  For example, subclasses are appropriate where "all members of the proposed class challenge defendants' policies as violative of" New York Labor Laws, "but the claims are based on . . . distinct alleged policies and not all proposed class members assert claims in each subclass." Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. 385, 393 (N.D.N.Y. 2011).[27/]

Spencer's proposed class includes all parking assistants employed by NPT since August 13, 2006.  (See page 7 above.)  Spencer's § 195.1 notice claim, however, only alleges that NPT violated the NYLL in and after January 2012.  (See page 6 above.)  Accordingly, the Court will consider a subclass of the proposed class for purposes of the NYLL § 195.1 claim.  The class

---

[25/]     Accord, e.g., Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp., 993 F.2d 11, 14 (2d Cir.), cert. denied, 510 U.S. 959, 114 S. Ct. 419 (1993); Flores v. Anjost Corp., 284 F.R.D. 112, 125 (S.D.N.Y. 2012).

[26/]     Accord, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 37 (2d Cir. 2009); Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp., 993 F.2d at 14; Marisol A. v. Giuliani, 126 F.3d 372, 379 (2d Cir. 1997); see also, e.g., In re Pfizer Inc. Sec. Litig., 282 F.R.D. 38, 54 (S.D.N.Y. 2012).

[27/]     Accord, e.g., Colozzi v. St. Joseph's Hosp. Health Ctr., 275 F.R.D. 75, 83 (N.D.N.Y. 2011); Meyers v. Crouse Health Sys., Inc., 274 F.R.D. 404, 413 (N.D.N.Y. 2011); see also, e.g., Marisol A. v. Giuliani, 126 F.3d at 379 ("One possible method of developing proper subclasses would divide the present class based on . . . the particular systemic failures which the plaintiffs assert have occurred."); In re Pfizer Inc. Sec. Litig., 282 F.R.D. at 54.

alleging unpaid overtime violations (the "overtime class") shall be defined as proposed: "Current and former employees of No Parking Today, Inc. who are or were employed as a 'parking assistant' or 'reserve parker' at any time between August 13, 2006 and the present."  (Spencer Br. at 2.)  The class alleging failure to comply with the notice requirement of NYLL § 195.1 (the "notice subclass") shall be defined as a subset of the proposed class: Current and former employees of No Parking Today, Inc. who are or were employed as a parking assistant or reserve parker at any time between January 1, 2012 and the present.

     **B.**     <u>**Rule 23 Class Certification Of NYLL Claims**</u>

To obtain certification of the overtime class and notice subclass, Spencer must satisfy the Rule 23(a) requirements—numerosity, commonality, typicality, adequacy, and the implied requirement of ascertainability—and the Rule 23(b) predominance and superiority requirements. Fed. R. Civ. P. 23(a)(1)-(4), (b)(3); <u>see also</u>, <u>e.g.</u>, <u>Fogarazzo</u> v. <u>Lehman Bros., Inc.</u>, 263 F.R.D. 90, 97 (S.D.N.Y. 2009) ("[T]he courts have added an 'implied requirement of ascertainability' to the express requirements of Rule 23(a)." (quoting <u>In re Initial Pub. Offerings Sec. Litig.</u>, 471 F.3d 24, 30 (2d Cir. 2006))).

"Rule 23 does not set forth a mere pleading standard."  <u>Wal-Mart Stores, Inc.</u> v. <u>Dukes</u>, 131 S. Ct. 2541, 2551 (2011).  "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." <u>Myers</u> v. <u>Hertz Corp.</u>, 624 F.3d 537, 547 (2d Cir. 2010), <u>cert. denied</u>, 132 S. Ct. 368 (2011); <u>see also</u>, <u>e.g.</u>, <u>Wal-Mart Stores, Inc.</u> v. <u>Dukes</u>, 131 S. Ct. at 2551.

The Second Circuit requires a liberal, rather than restrictive, interpretation of Rule 23 of the Federal Rules of Civil Procedure.  <u>See</u>, <u>e.g.</u>, <u>Marisol A.</u> v. <u>Giuliani</u>, 126 F.3d 372, 377 (2d

Cir. 1997) ("'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility. . . .'"). Courts have substantial discretion in determining whether to certify a class. See, e.g., Myers v. Hertz Corp., 624 F.3d at 547; Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. 385, 392 (N.D.N.Y. 2011); Shabazz v. Morgan Funding Corp., 269 F.R.D. 245, 249 (S.D.N.Y. 2010).

      Nevertheless, courts must undertake a "rigorous analysis" to ensure that Rule 23's requirements have been satisfied. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2551.[28/] "To do so, any factual disputes relevant to each Rule 23 requirement must be resolved, and any underlying facts relevant to a particular Rule 23 requirement must be established." Poplawski v. Metroplex on the Atl., LLC, No. 11-CV-3765, 2012 WL 1107711 at *5 (E.D.N.Y. Apr. 2, 2012) (Weinstein, D.J.); accord, e.g., Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2551-52 ("Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. '"[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."'").[29/] "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court

---

[28/]    Accord, e.g., Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982); Newman v. RCN Telecom Servs., Inc., 238 F.R.D. 57, 71 (S.D.N.Y. 2006) (Marrero, D.J. & Peck, M.J.); In re NTL, Inc. Sec. Litig., 02 Civ. 3013, 2006 WL 330113 at *4 (S.D.N.Y. Feb. 14, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 568225 (S.D.N.Y. Mar. 9, 2006); Fogarazzo v. Lehman Bros., Inc., 232 F.R.D. 176, 179 (S.D.N.Y. 2005).

[29/]    See also, e.g., Eng-Hatcher v. Sprint Nextel Corp., 07 Civ. 7350, 2009 WL 7311383 at *5 n.8 (S.D.N.Y. Nov. 13, 2009) ("While the Court should not decide the merits of the claims at the class certification stage, Rule 23 certification 'can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established."); In re Initial Pub. Offerings Sec. Litig., 471 F.3d at 41.

to probe behind the pleadings before coming to rest on the certification question." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. at 160, 102 S. Ct. at 2372.[30/]

        "Doubts about whether Rule 23 has been satisfied should be resolved in favor of certification." Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. at 392; accord, e.g., Colozzi v. St. Joseph's Hosp. Health Ctr., 275 F.R.D. 75, 82 (N.D.N.Y. 2011); Meyers v. Crouse Health Sys., Inc., 274 F.R.D. 404, 412 (N.D.N.Y. 2011).[31/]

        Moreover, "where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." Lee v. ABC Carpet & Home, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006); accord, e.g., Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("'[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together.'").[32/]

---

[30/]    Accord, e.g., Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2551; Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 251 (2d Cir. 2011) ("In deciding a motion for class certification under Rule 23, 'the district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met.'"); In re Initial Pub. Offerings Sec. Litig., 471 F.3d at 42 ("A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit.").

[31/]    See also, e.g., Morangelli v. Chemed Corp., 275 F.R.D. 99, 104 (E.D.N.Y. 2011) ("The Second Circuit . . . has shown a preference for granting rather than denying class certification." (quotations omitted)); Shabazz v. Morgan Funding Corp., 269 F.R.D. at 249 ("As the Second Circuit stated . . . 'if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.'" (quoting Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S. Ct. 2131 (1969))).

[32/]    See, e.g., Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. 100, 104-05 (E.D.N.Y. 2011); Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. at 392; Colozzi v.
(continued...)

1.     **Rule 23(a)(1) Numerosity**

a.     **Numerosity Standards**

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "'[J]oinder of all members need not be impossible, but only impracticable in the sense that joinder would "needlessly complicate and hinder efficient resolution of the litigation."'"  Newman v. RCN Telecom Servs., Inc., 238 F.R.D. 57, 72 (S.D.N.Y. 2006) (Marrero, D.J. & Peck, M.J.) (quoting In re Avon Sec. Litig., 91 Civ. 2287, 1998 WL 834366 at *5 (S.D.N.Y. Nov. 30, 1998)).[33]

"Although precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts, numbers in excess of forty generally satisfy the numerosity requirement."  Fogarazzo v. Lehman Bros., Inc., 232 F.R.D. at 179; see, e.g., Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997); Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.) ("numerosity is presumed at a level of 40

---

[32]     (...continued)
St. Joseph's Hosp. Health Ctr., 275 F.R.D. at 82; Meyers v. Crouse Health Sys., Inc., 274 F.R.D. at 412; Shabazz v. Morgan Funding Corp., 269 F.R.D. at 249.

[33]     Accord, e.g., Ligon v. City of N.Y., 12 Civ. 2274, --- F.R.D. ----, 2013 WL 500272 at *3 (S.D.N.Y. Feb. 11, 2013); Scaggs v. N.Y.S. Dep't of Educ., No. 06-CV-799, 2009 WL 890587 at *4 (E.D.N.Y. Mar. 31, 2009) ("To satisfy the numerosity requirement, plaintiffs need only show that 'in the absence of a class action, joinder would be "difficult" or "inconvenient."'"); In re NTL, Inc. Sec. Litig., 02 Civ. 3013, 2006 WL 330113 at *5 (S.D.N.Y. Feb. 14, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 568225 (S.D.N.Y. Mar. 9, 2006); Fogarazzo v. Lehman Bros., Inc., 232 F.R.D. 176, 179 (S.D.N.Y. 2005); In re Indep. Energy Holdings PLC Sec. Litig., 210 F.R.D. 476, 479 (S.D.N.Y. 2002); see generally 5 Moore's Federal Practice § 23.22[2] (2013).

members"), cert. denied, 515 U.S. 1122, 115 S. Ct. 2277 (1995); Korn v. Franchard Corp., 456 F.2d 1206, 1209 (2d Cir. 1972).[34/]

**b.      Numerosity Is Established For The Overtime Class**

Spencer submits that the potential class size exceeds seventy-five, satisfying the numerosity requirement.  (Dkt. No. 20: Spencer Br. at 6, 17-18; Dkt. No. 27: Spencer Reply Br. at 4-5.)  NPT counters that "Plaintiff has failed to proffer any evidence to prove that the number of parking assistants who allegedly worked overtime hours are so numerous that joinder of all members is impracticable."  (Dkt. No. 24: NPT Opp. Br. at 9.)

Spencer asserts that he is aware of at least seventy-five other potential class members through personal observations and conversations, and he provides the names of five individuals.  (Dkt. No. 21: Spencer Aff. ¶¶ 15, 23.)  The Owen records contain evidence of at least ten individuals who worked overtime during the relevant period.  (See page 5 nn.8-9 above.)  NPT's Thomas testified at his deposition that while the precise number varies, NPT steadily employs approximately seventy parking assistants at any given time.  (Thomas Dep. at 71.)  During discovery, NPT produced a list containing the names of 205 potential class members employed by NPT from August 2006 to August 2012.  (Dkt. No. 22: Lipsky Aff. Ex. D: Class Member List.)[35/]

---

[34/]      See also, e.g., Newman v. RCN Telecom Servs., Inc., 238 F.R.D. at 72; In re NTL, Inc. Sec. Litig., 2006 WL 330113 at *5; Presbyterian Church of Sudan v. Talisman Energy, Inc., 226 F.R.D. 456, 466 (S.D.N.Y. 2005) ("Numerosity is presumed when a class consists of forty or more members."); In re Avon Sec. Litig., 1998 WL 834366 at *5 ("In general, 'numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the requirement.'"); Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y. 1992); 5 Moore's Federal Practice § 23.22[1][b].

[35/]      Defendants did not challenge plaintiffs' characterization of this list.  (NPT Opp. Br. at 9-10.)

Spencer's evidence establishes that the overtime class is sufficiently numerous for class certification.  See, e.g., Flores v. Anjost Corp., 284 F.R.D. 112, 123-24 (S.D.N.Y. 2012) ("Plaintiffs also produce a spreadsheet created by Defendants which shows that Defendants have employed over 50 tipped employees and over 580 non-exempt employees during the time period of the proposed class.  The spreadsheet is enough to establish numerosity." (record citation omitted)); Poplawski v. Metroplex on the Atl., LLC, No. 11-CV-3765, 2012 WL 1107711 at *6 (E.D.N.Y. Apr. 2, 2012) ("The proposed class is sufficiently numerous to be certified.  Plaintiffs allege that they personally worked with approximately forty to 160 similarly-situated employees on defendants' construction projects and sites.  They have provided lists of individuals who they remember working with." (record citations omitted)); Eng-Hatcher v. Sprint Nextel Corp., 07 Civ. 7350, 2009 WL 7311383 at *6 (S.D.N.Y. Nov. 13, 2009) (numerosity satisfied for proposed class of retail sales consultants allegedly denied overtime compensation, where "a 'simple google search reveals over 40 [of defendant's] stores in New York'" and "'each store employed a number of Retail Sales Consultants during the class period'"); Cuzco v. Orion Builders, Inc., 262 F.R.D. 325, 333 (S.D.N.Y. 2009) ("Plaintiffs' review of Defendants' records reveals that Defendants employed a total of 80 individual workers during the years 2003, 2004, and 2005, and Defendants have conceded that '67 individuals worked for the Defendants' during this period.  Based on the number of potential plaintiffs, considerations of judicial economy arising from a single suit, and the low probability of any other individual suits, the Court finds that Plaintiffs satisfy Rule 23(a)'s numerosity requirement." (citations omitted)); Gonzalez v. Nicholas Zito Racing Stable Inc., No. 04 CV 22, 2008 WL 941643 at *5 (E.D.N.Y. Mar. 31, 2008) ("Defendants' employee list sets forth the names

of roughly 488 individuals that are potential class members; thus, the Court finds that there are enough potential class members to fulfill the numerosity prong.").

NPT's argument that there is insufficient proof of the exact number of parking assistants who were denied overtime wages (NPT Opp. Br. at 9) is unavailing.  The evidence presented here is sufficient to allow the Court to infer that the precise number of NPT's over 200 parking assistants who in fact worked uncompensated overtime pursuant to NPT's admittedly uniform policies and practices, is sufficiently numerous to warrant class certification.  See, e.g., Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 370 (S.D.N.Y. 2007) ("The plaintiffs allege that there are approximately 125 workers who fall within the proposed class definition solely for the time period during which they were employed at the defendants' operations.  Given the high rate of turnover plaintiffs allege, the number of workers for the entire six-year period for which certification is sought would be significantly greater still.  With these numbers, plaintiffs easily satisfy the numerosity requirement."); accord, e.g., Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. 385, 392-94, (N.D.N.Y. 2011) ("Subclass II is comprised of all current and former hourly employees of defendants from November 13, 2002, to present who were suffered or permitted to perform work before or after their scheduled shift but were not paid for such work. . . . With respect to Subclass II, plaintiffs contend that based on the 2,701 hourly employees and the testimonial evidence concerning off the clock work, it is reasonable to infer that this subclass would be comprised of more than 40 employees. . . . [P]laintiffs may rely on reasonable inferences drawn from the available facts to estimate the size of the class.").[36]

---

[36]    See also, e.g., Ruggles v. WellPoint, Inc., 272 F.R.D. 320, 335 (N.D.N.Y. 2011) ("Those seeking certification need not identify the precise number or identity of potential class
(continued...)

This is especially true where, as here, the compensation and payroll records evidencing the alleged unpaid overtime are in NPT's exclusive control.  See, e.g., Nicholson v. Williams, 205 F.R.D. 92, 100 (E.D.N.Y. 2001) (Weinstein, D.J.) ("Much of the information proving numerosity . . . is in the hands of the defendants, and is unavailable to plaintiffs.  This consideration relaxes the numerosity requirement."); In re Blech Sec. Litig., 187 F.R.D. 97, 103 (S.D.N.Y. 1999) ("[M]ore precise information as to the numbers of persons affected is within Defendants' control, but 'there is something within the record from which it can be inferred that a class does exist,' and 'a rough estimate could be made.'"); McNeill v. N.Y.C. Hous. Auth., 719 F. Supp. 233, 252 (S.D.N.Y. 1989) ("[L]ack of knowledge as to the exact number of affected persons is not a bar to maintaining a class action where the defendants alone have access to such data.").[37/]

---

[36/]   (...continued)
members, but must offer evidence supporting a reasonable estimate of the size of the potential class." (citing Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993))); Toure v. Cent. Parking Sys. of N.Y., 05 Civ. 5237, 2007 WL 2872455 at *6 (S.D.N.Y. Sept. 28, 2007); Maneely v. City of Newburgh, 208 F.R.D. 69, 74 (S.D.N.Y. 2002) ("While one can fairly infer that some of those [proposed class members] were strip searched in a constitutionally-compliant manner, one can also infer that there were enough unconstitutional searches that joinder of all members would be impracticable."); Jackson v. Foley, 156 F.R.D. 538, 541-42 (E.D.N.Y. 1994) ("Courts have found that '[p]laintiff[s] need not allege the exact number or identity of class members' and that a 'good faith estimate should be sufficient when the number of class members is not readily ascertainable.'").

[37/]   See also, e.g., Toure v. Cent. Parking Sys. of N.Y., 2007 WL 2872455 at *6; Jackson v. Foley, 156 F.R.D. at 542 (Defendants "contend that the Plaintiffs are merely speculating in asserting that the class is so numerous.  Yet, '[i]t is permissible for the plaintiffs to rely on reasonable inferences drawn from the available facts.'  The Plaintiffs' estimate of potential class members is reasonable based on the limited information available to them.  Only the State Defendants know the exact number of borrowers who were denied participation in the REFA program . . . .  Such an information monopoly will not stand in the way of persons seeking relief." (citation omitted)); Folsom v. Blum, 87 F.R.D. 443, 445 (S.D.N.Y. 1980) ("The exact number of affected persons is known to the defendants who have the means to identify them at will.").

Finally, the Court notes that sheer size alone is not the only factor to consider when analyzing numerosity. See, e.g., Assif v. Titleserv, Inc., No. 11-CV-3203, --- F.R.D. ----, 2012 WL 6212844 at *3 (E.D.N.Y. Dec. 13, 2012); Toure v. Cent. Parking Sys. of N.Y., 2007 WL 2872455 at *5; Frank v. Eastman Kodak Co., 228 F.R.D. 174, 180-81 (W.D.N.Y. 2005) ("[A] court evaluating the appropriateness of class certification must consider more than mere numbers alone." (citing Robidoux v. Celani, 987 F.2d at 936)).

Joinder is increasingly impracticable and a finding of numerosity is supported where, as here, the potential class members are of limited financial means, or may fear retaliation by their employer.[38/] E.g., 5 Moore's Federal Practice § 23.22[1][e] ("[C]ourts will be more likely to find impracticability of joinder if fear of retaliation or prejudice could deter individual class members from bringing suit.  Similarly, an individual class member may be unlikely to seek legal redress in an individual action for a variety of other, similar reasons, including a lack of financial resources . . . ." (fn. omitted)); Duarte v. Tri-State Physical Med. & Rehab., P.C., 11 Civ. 3765, 2012 WL 2847741 at *9 (S.D.N.Y. July 11, 2012); Toure v. Cent. Parking Sys. of N.Y., 2007 WL 2872455 at *6 n.2 ("Even if Defendants' estimate of the size of the putative class [twenty-five to thirty-five] were correct, this Court would still find the numerosity requirement satisfied . . . . [T]he

---

[38/]   Although not raised in the briefs, there is some evidence of potential class members' limited financial means (Thomas Dep. at 73: "these guys live from paycheck to paycheck"), and possible fear of retaliation (Dkt. No. 1 Compl. ¶¶ 51-53, 80-97). See, e.g., Niemiec v. Ann Bendick Realty, No. 04-cv-00897, 2007 WL 5157027 at *7 (E.D.N.Y. Apr. 23, 2007) (where plaintiffs alleged defendants "took negative employment actions against them in retaliation for their decision to participate in this action," numerosity was satisfied where only ten additional class members were identified, since there was evidence establishing "the existence of over 100 potential class members" and plaintiffs' proffered an explanation for the reason more class members had not opted in to the FLSA collective action, namely, that they "were employed by the successors to the defendant corporation and afraid of losing their jobs").

Court finds that judicial economy would be served by hearing all overtime claims in one action, that the resources of the potential plaintiffs—employees at parking garages—are limited, and that class members would find it extremely difficult to file and maintain individual claims, not least due to a fear of retaliation."); Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 85-86 (S.D.N.Y. 2001) ("I also find it fair to consider that the members of this group [supermarket delivery people] would not be likely to file individual suits.  Their lack of adequate financial resources or access to lawyers, their fear of reprisals (especially in relation to the immigrant status of many), the transient nature of their work, and other similar factors suggest that individual suits as an alternative to a class action are not practical.").[39/]

   Accordingly, the Court finds that Rule 23(a)'s numerosity requirement is satisfied as to the overtime class.

---

[39/] See, e.g., Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 342 (S.D.N.Y. 2004) ("[B]ecause [plaintiff] has provided evidence tending to suggest that potential class members may have failed to join the FLSA collective action because they feared reprisal, particularly given their citizenship status, it is reasonable to believe that many employees fall within the ambit of the defined class."); see also, e.g., Frank v. Eastman Kodak Co., 228 F.R.D. at 181 ("In this matter, the parties jointly seek class certification for a class of twenty-eight individuals who . . . were suffered or permitted to perform services for [defendant] in excess of forty hours in one week.  While joinder of these individuals is certainly not impossible, it is nonetheless improbable under the circumstances of this case.  Of the twenty-eight individuals eligible to participate in this action, approximately one-third of them, while they worked some overtime, did so at levels entitling them to receive compensation under the Agreement in amounts below one thousand dollars each.  The small recoveries expected to be received by these individuals renders it less likely that, without the benefit of class representation, they would be willing to incur the financial costs and hardships of separate litigations, which would certainly exceed their recoveries manyfold." (record citation omitted)).

**c.      Numerosity Is Established For The Notice Subclass**

Numerosity also is satisfied as to the notice subclass.  NPT's Thomas's testimony establishes there were approximately seventy parking assistants during January 2012.  (See page 4 above.)  Further, there is nothing in Thomas's testimony regarding the alleged notice violation that suggests some parking assistants were given the notice information while others were not.  (See Thomas Dep. at 104-05.)

NPT's arguments regarding the notice subclass do not address the issue of whether the notice subclass is sufficiently numerous to warrant certification; instead, NPT focuses on whether Thomas's testimony establishes conclusively that NPT complied with the notice requirement.  (NPT Opp. Br. at 10-11.)  If NPT provided parking assistants with a notice form satisfying the NYLL requirement, then NPT will prevail on the merits of the § 195.1 claim, but that is immaterial to the class certification determination.  See, e.g., Morangelli v. Chemed Corp., 275 F.R.D. 99, 115 (E.D.N.Y. 2011) ("Whatever I may think of the merits of this argument, the question I must answer is whether plaintiffs have met their Rule 23 requirement." (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S. Ct. 2140, 2153 (1974))).  (See also cases cited at page 24 above, describing when the merits are relevant to class certification decisions.)

For now, defendants have presented nothing to rebut Spencer's claim that the number of parking assistants to whom NPT did not give the required notice in violation of NYLL § 195.1 was sufficiently numerous to warrant class certification.  See, e.g., Assif v. Titleserv, Inc., No. 11-CV-3203, --- F.R.D. ----, 2012 WL 6212844 at *3 (E.D.N.Y. Dec. 13, 2012) ("In this case, based on his own personal knowledge, the Plaintiff estimates that there were approximately 200 other full-time employees who worked at [defendant's] facilities and were eligible to receive a . . . notice . . . .

Accordingly, the Court finds that as the proposed class size is more than 40 members, the Plaintiff has satisfied the numerosity requirement.").

Accordingly, numerosity is established for the notice subclass.

**2.     Rule 23(a)(2) Commonality**

**a.     Commonality Standards**

Commonality requires a showing that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "'The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact.'" Newman v. RCN Telecom Servs., Inc., 238 F.R.D. 57, 73 (S.D.N.Y. 2006) (Marrero, D.J. & Peck, M.J.) (quotations omitted, citing cases). "This requisite 'does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment.'" Id. The commonality requirement is satisfied "if the class shares a single common question of law or fact," and "factual differences in the claims of the class do not preclude a finding of commonality." 5 Moore's Federal Practice § 23.23[2] (2013); accord, e.g., Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) ("Their claims must depend upon a common contention—for example, the assertion of [unlawful conduct] on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."); Newman v. RCN Telecom Servs., Inc., 238 F.R.D. at 73.

"In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." Poplawski v. Metroplex on the Atl., LLC, No. 11-CV-3765, 2012 WL 1107711 at *7 (E.D.N.Y. Apr. 2, 2012);

accord, e.g., Flores v. Anjost Corp., 284 F.R.D. 112, 125 (S.D.N.Y. 2012) ("Courts in this district have . . . focused on whether the employer had company-wide wage policies that injured the proposed class.  And 'claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification.'" (citations omitted)); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (Carter, D.J.).[40/]

### b. Commonality Is Established For The Overtime Class

Spencer alleges that the overtime class members share the common legal question of "whether Defendants' policy of not paying overtime premium pay violated the NYLL."  (Dkt. No. 20: Spencer Br. at 19.)  He further argues that "[t]hese questions do not require individualized inquiries to be answered because Defendants readily admit that the class members are uniformly not paid overtime."  (Id.)  This admission, Spencer argues, "establish[es] that relevant questions of fact are common to the entire class, as their injuries derived from Defendants' common wage practices that resulted in the class members suffering the same injuries."  (Id.)  In opposition, NPT argues that Spencer has failed to establish commonality because of the Worker's Agreement:

> Here, the fact that the parking assistants voluntarily sign an agreement to not work more than 40 hours a week, maintain complete control over their own work schedule, and keep track of their own hours, warrants a finding that they have not all suffered the same injury.  While Plaintiff may have violated the Worker's Agreement he entered into by allegedly working overtime hours, he has failed to establish that all other parking assistants also violated their agreements and worked overtime, or were ever required to work overtime by NPT.

---

[40/]   See also, e.g., Tiro v. Pub. House Invs., LLC, 11 Civ. 7679, 11 Civ. 8249, --- F.R.D. ----, 2012 WL 6053961 at *6 (S.D.N.Y. Dec. 4, 2012); Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 127 (S.D.N.Y. 2011) ("[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification."); Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 343 (S.D.N.Y. 2004).

(Dkt. No. 24: NPT Opp. Br. at 11.)[41/]

NPT has an express policy not to pay overtime, and NPT unequivocally admits that it never has paid overtime wages to any parking assistant.  (See page 6 above.)  NPT also admits that its policies and practices are applied uniformly to all parking assistants,[42/] and the evidence presented to the Court supports a finding that despite the Worker's Agreement, NPT maintains policies and practices under which parking assistants are permitted to, and regularly do, work more than forty hours per week.  (See pages 3-6 above.)  The common injury allegedly suffered is that, as a result of these uniform NPT policies and practices, parking assistants were denied the overtime wages due to them in violation of the NYLL.  (See page 35 above.)

These allegations and admissions are sufficient to establish commonality for purposes of Rule 23 class certification.  See, e.g., Ross v. RBS Citizens, N.A., 667 F.3d 900, 909 (7th Cir. 2012) ("Although there might be slight variations in how [defendant] enforced its overtime policy, both classes maintain a common claim that [defendant] broadly enforced an unlawful policy denying employees earned-overtime compensation.  This unofficial policy is the common answer that potentially drives the resolution of this litigation." (citing Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011))); Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 252 (2d Cir. 2011) (commonality requirement satisfied where "the Plaintiffs' NYLL class claims all derive from the same compensation policies" and "all of the class plaintiffs' claims arise under the same New

---

[41/]   NPT's argument that Spencer's individual retaliation claim defeats class certification (NPT Opp. Br. at 11-12) is addressed in the typicality analysis.  (See page 44 below.)

[42/]   See, e.g., Flores v. Anjost Corp., 284 F.R.D. 112, 127 (S.D.N.Y. 2012) ("I find that Plaintiffs have satisfied the commonality and typicality requirement . . . because [defendants' 30(b)(6) witness] testified that the policies affecting these roles are the same.").

York State statutes and regulations"); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 615 (S.D.N.Y. 2012) (Carter, D.J.) (Commonality satisfied where "All Class Members raise common issues: (1) whether Defendant had a policy of not paying Marketing Representatives and Specialists overtime premium pay for hours worked over 40 in a workweek; (2) whether Defendant failed to pay Class Members premium overtime wages; and (3) whether Defendant knew or should have known that Class Members were working 'off-the-clock.'"); Gonzalez v. Nicholas Zito Racing Stable Inc., No. 04 CV 22, 2008 WL 941643 at *5 (E.D.N.Y. Mar. 31, 2008) ("The common question of fact here is whether the plaintiff class members were denied overtime pay.  The common question of law is whether the labor laws were violated by this alleged failure to pay overtime.  During the relevant time period, Plaintiffs all worked as laborers for [defendant].  Accordingly, the commonality requirement is satisfied."); Toure v. Cent. Parking Sys. of N.Y., 05 Civ. 5237, 2007 WL 2872455 at *6 (S.D.N.Y. Sept. 28, 2007) ("[T]here are significant issues common to the class, including whether or not Defendants had a policy of denying overtime pay to parking attendants . . . .").[43/]

---

[43/]    See also, e.g., Girault v. Supersol 661 Amsterdam, LLC, 11 Civ. 6835, 2012 WL 2458172 at *1-2 (S.D.N.Y. June 28, 2012); Poplawski v. Metroplex on the Atl., LLC, No. 11-CV-3765, 2012 WL 1107711 at *7-8 (E.D.N.Y. Apr. 2, 2012) ("Plaintiffs allege that 'the Named Plaintiffs' claims and those of the members of the putative class arise from a common wrong: Defendants failed to pay, or to ensure payment, of the proper regular time wages and overtime rates for work performed by Plaintiffs in any given work week.' . . . The evidence indicates that the plaintiffs may be found to have been subject to a uniform policy of unlawful labor practices. . . . There is sufficient proof for certification purposes of a uniform policy of underpayment, presenting a common question that is subject to classwide proof."); Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 127 (S.D.N.Y. 2011); Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 199 (S.D.N.Y. 2011); Khait v. Whirlpool Corp., No. 06-6381, 2010 WL 2025106 at *2 (E.D.N.Y. Jan. 20, 2010) (Carter, M.J.) ("All class members bring the identical claim that [defendant] failed to pay them earned wages for pre-shift and post-shift work in violation of state wage and hour laws. Other common issues include . . . whether [defendant] failed to pay Plaintiffs and the class members overtime

(continued...)

That some parking assistants may have worked more hours than others because they "maintain complete control over their own work schedule" or "keep track of their own hours" does not implicate the commonality determination, but rather goes to damages.  See, e.g., Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. at 199 ("Defendants do not dispute that the framework for determining how much each tipped employee would make for each shift is identical.  They argue only that the . . . projected shift hours differ among the different types of tipped employees at the three locations.  This argument boils down to a concern that damages among class members will differ.  '[B]ecause commonality does not mean that all issues must be identical as to each member, the need for an individualized determination of damages suffered by each class member generally does not defeat the requirement.'  Plaintiffs satisfy the requirement of commonality." (citation omitted)); Gonzalez v. Nicholas Zito Racing Stable Inc., 2008 WL 941643 at *5 (rejecting argument

---

43/      (...continued)
premium pay for all hours they worked over 40 in a workweek . . . ."); Mentor v. Imperial Parking Sys., Inc., 246 F.R.D. 178, 183 (S.D.N.Y. 2007); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("The complaint raises a number of questions of law and fact common to all members of the class, including, inter alia, factual questions regarding defendants' payroll practices, overtime policy, and compliance with minimum wage requirements, as well as legal questions concerning the applicability of the New York Labor Law and any exemptions. . . . At this preliminary stage, before extensive merits discovery, plaintiffs' own statements suffice to establish the commonality . . . of their wage and hour claims."); Torres v. Gristede's Operating Corp., 04 Civ. 3316, 2006 WL 2819730 at *14 (S.D.N.Y. Sept. 29, 2006) ("Plaintiffs are all subject to the same corporate policies and practices. . . .  They also share a common legal claim that Defendant[s'] failure to pay them for overtime hours is a violation of NYLL minimum wage and overtime regulations.  Plaintiffs have introduced sufficient evidence that their allegations apply to the proposed class as a whole." (citations & fn. omitted)); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 181-82 (W.D.N.Y. 2005); Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 343 (S.D.N.Y. 2004) ("All potential class members are alleged to have been harmed by a common practice—defendants' failure to adequately compensate employees for overtime hours.  The legal theory set forth in [plaintiffs'] Complaint is common to all class members—that this alleged failure to pay overtime violates New York's labor law.  Accordingly, the commonality requirement is satisfied.").

against commonality based on the fact that each class member "works different hours" because "once a common question is identified, 'differences among the questions raised by individual members [of the class] will not defeat commonality'"); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. at 371 (the fact that named plaintiffs "worked three shifts a day, and that workers in other departments performed different tasks on a different schedule" was "not a distinction that makes a difference" in this type of labor law case, "where the gravamen of the claim is that workers were . . . not paid for overtime work"); Noble v. 93 Univ. Place Corp., 224 F.R.D. at 343 ("Although there are some differences among employees—i.e., responsibilities, hours worked, and salaries—these differences are relatively minor and relate primarily to the level of damages, if any, owing to each individual.").[44]

Likewise, commonality is not defeated by the fact that working overtime was voluntary, Gonzalez v. Nicholas Zito Racing Stable Inc., 2008 WL 941643 at *1, *6 (rejecting argument that class certification requirements not met because class members were "permitted to return in the afternoons on a strictly voluntary basis" and thus their "extra work was strictly voluntary and accordingly varied widely from case to case"), nor by the possibility that some parking assistants may not have worked any overtime hours. See, e.g., Morangelli v. Chemed Corp., No. 10 Civ. 0876, --- F. Supp. 2d ----, 2013 WL 432571 at *23 (E.D.N.Y. Feb. 4, 2013) ("The fact that some Discovery Plaintiffs were not affected by the purported time-shaving practice or were

---

[44]  See also, e.g., Flores v. Anjost Corp., 284 F.R.D. at 127; Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. 100, 106 (E.D.N.Y. 2011); Espinoza v. 953 Assocs. LLC, 280 F.R.D. at 127; Niemiec v. Ann Bendick Realty, No. 04-cv-00897, 2007 WL 5157027 at *11 (E.D.N.Y. Apr. 23, 2007).

affected to different extents does not undermine plaintiffs' ability to establish liability . . . through generalized proof." (citing <u>Wal–Mart Stores, Inc.</u> v. <u>Dukes</u>, 131 S. Ct. at 2551)).[45/]

Accordingly, commonality is established for the overtime class.

### c.      <u>Commonality Is Established For The Notice Subclass</u>

The Court also finds that Spencer's NYLL § 195.1 notice claim raises questions of law and fact that are common to the class, including "whether Defendants' failure to provide the 195.1 Notice between January 1, 2012 and February 1, 2012 violated the NYLL." (Dkt. No. 20: Spencer Br. at 19, citation omitted.)  As to NPT's argument that NPT may have complied with the notice requirement by furnishing the information in a different form, that too raises a common question—namely, whether any such form complied with the NYLL—the resolution of which likewise would be common to all members of the notice subclass. <u>See</u>, <u>e.g.</u>, <u>Flores</u> v. <u>Anjost Corp.</u>, 284 F.R.D. 112, 127 (S.D.N.Y. 2012) ("Plaintiffs have also demonstrated commonality and typicality on behalf of the proposed class with regard to their wage statement claims.  [Defendants' 30(b)(6) witness] could not have been clearer that the form of the pay stubs, i.e., wage statements, is the 'same for the <u>entire company</u>.'  Resolution of the legality of the common form of Defendants'

---

[45/]      The Court also notes that NPT's position is undermined by their failure to submit any timesheets or payroll records evidencing that parking assistants did not regularly work overtime.  <u>See</u>, <u>e.g.</u>, <u>Flores</u> v. <u>Anjost Corp.</u>, 284 F.R.D. at 126 ("It would have been extremely easy for Defendants to adduce any evidence that they had a policy of paying spread of hours wages as required by the NYLL—Defendants are in control of their own wage policies and records."); <u>Toure</u> v. <u>Cent. Parking Sys. of N.Y.</u>, 2007 WL 2872455 at *6 (the Court's decision to credit plaintiffs' contentions over defendants' was based, in part, on the fact that "Defendants curiously fail to provide a specific number of parking attendants who worked the night shift, which this Court presumes they easily could have gleaned from their payroll records"); <u>see also</u>, <u>e.g.</u>, <u>Espenscheid</u> v. <u>DirecStat USA, LLC</u>, No. 09-cv-625, 2010 WL 2330309 at *7 (W.D. Wis. June 7, 2010) ("[D]efendants have presented no evidence to contradict plaintiffs' assertions, such as declarations from installation technicians and field managers averring that they were in fact compensated for overtime and nonproductive work or other evidence that the company followed its formal policies.").

wage statements is thus likely to produce common answers for the proposed class as a whole." (citation omitted)).

### 3.    Rule 23(a)(3) Typicality

#### a.    Typicality Standards

Typicality under Rule 23(a) "requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992), cert. dismissed, 506 U.S. 1088, 113 S. Ct. 1070 (1993)).[46] "The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158 n.13, 102 S. Ct. 2364, 2371 n.13 (1982).[47]

"'While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'" Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52,

---

[46]    Accord, e.g., Newman v. RCN Telecom Servs., Inc., 238 F.R.D. 57, 76 (S.D.N.Y. 2006) (Marrero, D.J. & Peck, M.J.) (& cases cited therein).

[47]    Accord, e.g., Marisol A. v. Giuliani, 126 F.3d at 376; Newman v. RCN Telecom Servs., Inc., 238 F.R.D. at 76 (& cases cited therein).

59 (2d Cir. 2000).[48]  "However, 'the rule barring certification of plaintiffs subject to unique defenses is not rigidly applied in this Circuit'; it has generally been applied only where a full defense is available against an individual plaintiff's action."  Koppel v. 4987 Corp., 191 F.R.D. 360, 365 (S.D.N.Y. 2000) (quoting In re Frontier Ins. Grp., Inc. Sec. Litig., 172 F.R.D. 31, 41 (E.D.N.Y. 1997)).  The unique defense rule is "intended to protect [the] plaintiff class—not to shield defendants from a potentially meritorious suit."  Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 200-01 (S.D.N.Y. 1992); accord, e.g., Newman v. RCN Telecom Servs., Inc., 238 F.R.D. at 77.

### b.        Typicality Is Established For The Overtime Class

To demonstrate liability, each class member will make the same legal argument that NPT's policies and practices regarding overtime violate the NYLL.  (See Dkt. No. 20: Spencer Br. at 20.)  Spencer has adduced sufficient evidence showing that all class members' claims arise from the same course of events, namely, NPT's policies and practices of permitting parking assistants to work overtime but denying them overtime premium wages.  (See pages 3-6 above.)

Accordingly, Spencer's unpaid overtime claim is typical of class members' claims. See, e.g., Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 128 (S.D.N.Y. 2011) (typicality satisfied where the "overtime claims alleged by Plaintiffs are similar to those of the class members and arise from the same allegedly unlawful practices and policies"); Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. 100, 106 (E.D.N.Y. 2011) ("Here, [the named plaintiffs] and the prospective class 'were subject to the same general employment scheme,' and their claims are all based on 'the same course of events and legal theory.'  'Even if some class members' facts are somewhat different than [the named plaintiffs] the claims are similar enough to meet the typicality element.'" (citations

---

[48]    Accord, e.g., Newman v. RCN Telecom Servs., Inc., 238 F.R.D. at 76; 5 Moore's Federal Practice § 23.24[5] (2013).

omitted)); <u>Gonzalez</u> v. <u>Nicholas Zito Racing Stable Inc.</u>, No. 04 CV 22, 2008 WL 941643 at *6 (E.D.N.Y. Mar. 31, 2008) ("[E]ach class member will make the same arguments to prove [defendant's] liability, specifically that they were underpaid in violation of the FLSA and New York Labor Laws.  Thus, typicality is satisfied."); <u>Frank</u> v. <u>Eastman Kodak Co.</u>, 228 F.R.D. 174, 182 (W.D.N.Y. 2005) (Plaintiff's "claims arise from the same course of events as those raised by all other class members—that is, all class members, including [plaintiff], allege that [defendant] failed to pay them . . . overtime wages for hours worked in excess of forty per week during the relevant time period.  Thus, the legal arguments raised by [plaintiff] will be common to all plaintiffs.  For these reasons, I find that the typicality requirement has been satisfied.").[49/]

Again, as with commonality, there is no merit to NPT's argument (Dkt. No. 24: NPT Opp. Br. at 11-12) that typicality is not established because Spencer may have worked more overtime hours than other class members.  <u>See</u>, <u>e.g.</u>, <u>Espinoza</u> v. <u>953 Assocs. LLC</u>, 280 F.R.D. at 128 ("Typicality is satisfied despite differences in damages arising from a disparity in injuries

---

[49/]    <u>See also</u>, <u>e.g.</u>, <u>Shahriar</u> v. <u>Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 252 (2d Cir. 2011); <u>Marisol A.</u> v. <u>Giuliani</u>, 126 F.3d 372, 377 (2d Cir. 1997); <u>Morris</u> v. <u>Affinity Health Plan, Inc.</u>, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (Carter, D.J.); <u>Poplawski</u> v. <u>Metroplex on the Atl., LLC</u>, No. 11-CV-3765, 2012 WL 1107711 at *8 (E.D.N.Y. Apr. 2, 2012); <u>Morangelli</u> v. <u>Chemed Corp.</u>, 275 F.R.D. 99, 118 (E.D.N.Y. 2011) ("Plaintiffs' claims arise out of the same work-related events and are brought under the same legal theories.  Plaintiffs complain of the same wrongful acts—impermissible . . . practices of altering time sheets—that they allege were committed in the same manner, if not to the same degree, against all members of the class they seek to represent.  The typicality requirement is therefore satisfied."); <u>Khait</u> v. <u>Whirlpool Corp.</u>, No. 06-6381, 2010 WL 2025106 at *2 (E.D.N.Y. Jan. 20, 2010) (Carter, M.J.) ("Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims.  The named plaintiffs held the same position and had the same job duties as the class members.  They also suffered the same alleged injury as did the class members—that [defendant] permitted them to perform work without compensation." (citation omitted)); <u>Mentor</u> v. <u>Imperial Parking Sys., Inc.</u>, 246 F.R.D. 178, 183 (S.D.N.Y. 2007); <u>Torres</u> v. <u>Gristede's Operating Corp.</u>, 04 Civ. 3316, 2006 WL 2819730 at *14 (S.D.N.Y. Sept. 29, 2006).

among the class members."); Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 199

(S.D.N.Y. 2011) ("Defendants argue that [the named plaintiff] is atypical because he testifies that

he stayed late 80-90% of the time to perform additional tasks.  '[D]ifferences among the Plaintiffs

as to the number of hours worked, the precise work they did, and the amount of pay they received

concern the amount of damages to which any individual Plaintiff might be entitled,' but do not defeat

typicality for Rule 23 purposes."); Gonzalez v. Nicholas Zito Racing Stable Inc., 2008 WL 941643

at *6 (Defendants "argue that claims will differ even more for the hot walkers, whose extra work

was strictly voluntary and accordingly varied widely from case to case. . . . However, courts have

found the typicality requirement satisfied despite the existence of similar factual variations.").[50/]

Finally, there is no merit to NPT's argument that Spencer's individual retaliation

claim defeats class certification.  (NPT Opp. Br. at 11-12.)  See, e.g., Toure v. Cent. Parking Sys.

of N.Y., 05 Civ. 5237, 2007 WL 2872455 at *7 (S.D.N.Y. Sept. 28, 2007) ("Defendants argue that

certain Plaintiffs assert racial discrimination as a reason that they were not given forty hours of work

per week, and that this defeats typicality.  This argument is without merit, because it rests on a

conflation of Plaintiffs' racial discrimination claims (which are not brought in a representative

capacity) with their unpaid overtime claims (which are).  Plaintiffs' NYLL claims are the same as

those of the putative class members—namely, that when they worked more than forty hours per

---

[50/]    See also, e.g., Nobles v. State Farm Mut. Auto. Ins. Co., No. 10-CV-04175, 2011 WL
3794021 at *5 (W.D. Mo. Aug. 25, 2011); Niemiec v. Ann Bendick Realty, No. 04-cv-
00897, 2007 WL 5157027 at *11 (E.D.N.Y. Apr. 23, 2007); Iglesias-Mendoza v. La Belle
Farm, Inc., 239 F.R.D. 363, 371 (S.D.N.Y. 2007); Jackson v. Foley, 156 F.R.D. 538, 543
(E.D.N.Y. 1994) ("The specific circumstances surrounding an individual's calculated
monthly payments are unique and not to be compared with other class members; '[f]actual
differences will not defeat class certification where the various claims arise from the same
legal theory.'").

week they were not paid overtime.  Accordingly, this Court finds that the typicality requirement is satisfied.").

Accordingly, typicality is satisfied for the overtime class.

### c.   Typicality Is Established For The Notice Subclass

All of the proposed notice subclass members' claims arise from the same course of conduct, i.e., NPT's alleged failure to furnish the required notice in or after January 2012, and all members of the notice subclass assert the same legal theory that NPT's failure to provide the required notice violated NYLL § 195.1.  Typicality is satisfied as to the notice subclass.  See, e.g., Assif v. Titleserv, Inc., No. 11-CV-3203, --- F.R.D. ----, 2012 WL 6212844 at *5 (E.D.N.Y. Dec. 13, 2012) (where plaintiff alleged defendant failed to provide employees with a statutorily required notice within the prescribed window, the typicality requirement was satisfied because the Court found that "the factual situation and the legal theories upon which the Plaintiff brings this action are not only typical of the entire class, but are nearly identical"); Mendez v. Pizza on Stone, LLC, 11 Civ. 6316, 2012 WL 3133547 at *3-4 (S.D.N.Y. Aug. 1, 2012) (Plaintiff's "wage and hour claims are representative of those that could be brought by other [defendant] employees during the class period. . . . [Defendant] has not described the manner in which it provided notice . . . or otherwise made a showing that it complied with the statutory notice requirements in place either before or after January 1, 2011. . . . At his deposition, [defendant's 30(b)(6) witness] stated that he does not provide [defendant's] employees with written notice of the terms of their employment . . . .").

4.       **Rule 23(a)(4) Adequacy Of Representation And Rule 23(g) Appointment Of Class Counsel**

       a.       <u>**Adequacy Standards**</u>

Plaintiffs must also show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." <u>In re Drexel Burnham Lambert Grp., Inc.</u>, 960 F.2d 285, 291 (2d Cir. 1992), <u>cert. dismissed</u>, 506 U.S. 1088, 113 S. Ct. 1070 (1993); <u>accord</u>, <u>e.g.</u>, <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, 574 F.3d 29, 35 (2d Cir. 2009); <u>Baffa</u> v. <u>Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 52, 60 (2d Cir. 2000) <u>Marisol A.</u> v. <u>Giuliani</u>, 126 F.3d 372, 378 (2d Cir. 1997).[51] As a result of the 2003 amendments to the Federal Rules of Civil Procedure, however, the issue of appropriate class counsel is guided by Rule 23(g) rather than Rule 23(a)(4). <u>See</u> 2003 Advisory Comm. Notes to Rule 23 ("Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification decision."); <u>accord</u>, <u>e.g.</u>, <u>Eldred</u> v. <u>Comforce Corp.</u>, No. 08-CV-1171, 2010 WL 812698 at *16 n.5 (N.D.N.Y. Mar. 2, 2010); <u>Mendoza</u> v. <u>Casa de Cambio Delgado, Inc.</u>, 07 Civ. 2579, 2008 WL 3399067 at *6 n.6 (S.D.N.Y. Aug. 12, 2008); <u>In re NTL, Inc. Sec. Litig.</u>, 2006 WL 330113 at *11; <u>see</u> 5 <u>Moore's Federal Practice</u> § 23.25[3] (2013).

---

[51]    <u>See</u>, <u>e.g.</u>, <u>Ligon</u> v. <u>City of N.Y.</u>, 12 Civ. 2274, --- F.R.D. ----, 2013 WL 500272 at *4 (S.D.N.Y. Feb. 11, 2013); <u>Brooklyn Ctr. for Independence of the Disabled</u>, 287 F.R.D. 240, 249 (S.D.N.Y. 2012); <u>In re NTL, Inc. Sec. Litig.</u>, 02 Civ. 3013, 2006 WL 330113 at *11 (S.D.N.Y. Feb. 14, 2006) (Peck, M.J.) (citing cases), <u>report & rec. adopted</u>, 2006 WL 568225 (S.D.N.Y. Mar. 9, 2006); <u>see generally</u> 5 <u>Moore's Federal Practice</u> § 23.25 (2013).

Class representatives cannot satisfy the adequacy requirement if they have "'so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'" Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d at 61; accord, e.g., In re NTL, Inc. Sec. Litig., 2006 WL 330113 at *11; see 5 Moore's Federal Practice § 23.25[2][c]. "However, it is well established that in complex litigations . . . a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance upon the expertise of counsel is to be expected." In re NTL, Inc. Sec. Litig., 2006 WL 330113 at *11 (quotations omitted); see, e.g., Tsereteli v. Residential Asset Securitization Trust 2006-A8, 283 F.R.D. 199, 209 (S.D.N.Y. 2012); In re Pfizer Inc. Sec. Litig., 282 F.R.D. 38, 51 (S.D.N.Y. 2012); 5 Moore's Federal Practice § 23.25[2][c][ii]. "'[I]n determining the adequacy of counsel, the court looks beyond reputation built upon past practice and examines counsel's competence displayed by present performance.'" In re NTL, Inc. Sec. Litig., 2006 WL 330113 at *11; see also, e.g., In re Pfizer Inc. Sec. Litig., 282 F.R.D. at 47 (considering "[t]he record of the instant litigation" in determining class counsel's adequacy); Velez v. Novartis Pharm. Corp., 244 F.R.D. 243, 268 (S.D.N.Y. 2007) (Lynch, D.J.).

### b.    Spencer Is An Adequate Class Representative

Spencer submits that he is an adequate class representative because his interests are not antagonistic to the class members' interests:

> Indeed, he has been injured in the same manner as the class members and seeks the same relief as each class member: to collect unpaid wages.  He has also spent multiple hours with counsel in preparing for conferences, for this motion, and for the deposition of Defendant Thomas.  No basis exists to contest the adequacy of the proposed class representative.

(Dkt. No. 20: Spencer Br. at 21, record citations omitted.)  NPT contests Spencer's adequacy as a

class representative, arguing:

> While Defendants do not contest Plaintiff's counsels' qualifications and capability to
> litigate this matter, Defendants do contest whether Plaintiff has shown an absence
> of conflict and antagonistic interests between him and the class members.  First,
> despite allegedly speaking to several parking assistants concerning Defendants'
> disputed practices, Plaintiff fails to provide affidavits from any other parking
> assistants in support of his contentions.  Second, Plaintiff has not alleged that either
> he, or any other parking assistants, were required to work any extra hours that they
> did not want to work.  Third, while Plaintiff also brings a claim for retaliation, he has
> not alleged that any other parking assistants were subjected to retaliation for any
> complaints they made about Defendants' alleged practices.  Thus, Plaintiff has not
> established the adequacy of representation requirement by a preponderance of the
> evidence.

(Dkt. No. 24: NPT Opp. Br. at 13.)  NPT's arguments are unavailing.

As discussed previously, there could be any number of reasons why additional

parking assistants have not provided affidavits for the litigation, including fear of retaliation.  (See

pages 31-32 & nn.38-39 above.)  In any event, the absence of such affidavits does not mean that

Spencer is not an adequate class representative.  See, e.g., Flores v. Anjost Corp., 284 F.R.D. 112,

130 (S.D.N.Y. 2012) ("[T]he sworn affidavits of named Plaintiffs clearly demonstrate that Plaintiffs

are familiar with, and are actively participating in, this litigation.  Courts in this circuit have found

that plaintiffs' affidavits can properly satisfy evidence adequacy."); Espinoza v. 953 Assocs. LLC,

280 F.R.D. 113, 128 (S.D.N.Y. 2011).  Likewise, to the extent NPT is suggesting Spencer's interests

are not aligned with the putative class members' interests because some parking assistants may not

have worked overtime or worked overtime voluntarily, that too is irrelevant to the adequacy

determination.  See, e.g., Nobles v. State Farm Mut. Auto. Ins. Co., No. 10-CV-04175, 2011 WL

3794021 at *6 (W.D. Mo. Aug. 25, 2011) (While "some putative class members may have been

adequately paid, this does not bear on whether Plaintiffs' interests are adverse to the class members.

[Defendant] fails to explain to the Court what the conflict is and how it adversely affects those class members who have no damages.").

Nor would NPT's reliance on the Worker's Agreement as a defense defeat Spencer's adequacy, since all parking assistants, including Spencer, signed the same Worker's Agreement. See, e.g., Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372 (S.D.N.Y. 2007) ("But this affirmative defense does not appear to be unique to the named plaintiffs.  It seems to apply (or not apply) to the class as a whole.  It is therefore irrelevant to the adequacy of the named plaintiffs' representation of the proposed class.").

Finally, Spencer's individual retaliation claim is not relevant to determining whether Spencer's interests are aligned with the class members' interests for purposes of establishing his adequacy as a class representative under Rule 23.  See, e.g., Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. 100, 107 (E.D.N.Y. 2011); Toure v. Cent. Parking Sys. of N.Y., 05 Civ. 5237, 2007 WL 2872455 at *7 (S.D.N.Y. Sept. 28, 2007) (rejecting argument that class plaintiffs "are inadequate class representatives because they each bring race discrimination claims of significantly greater value than their claims for unpaid overtime, which will inevitably cause the former to become the primary focus of the litigation"); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. at 372 ("I fail to see why the circumstances of [plaintiff's] termination are relevant to whether he was paid overtime wages . . . during the period while he was employed.").

Accordingly, the Court finds "there is nothing in the record to suggest that the class representative[] [is] inadequate." Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 253 (2d Cir. 2011); accord, e.g.,  Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 616

(S.D.N.Y. 2012) (Carter, D.J.) (adequacy requirement satisfied "because there is no evidence that Plaintiff's and Class Members' interests are at odds").[52/]

       Spencer's adequacy as class representative is further bolstered by the finding that his claims satisfied the typicality requirement.  See, e.g., Tiro v. Pub. House Invs., LLC, 11 Civ. 7679, 11 Civ. 8249, --- F.R.D. ----, 2012 WL 6053961 at *7 (S.D.N.Y. Dec. 4, 2012) ("[M]eeting the typicality requirement is strong evidence that Plaintiffs' 'interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.'"); Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. at 107 (Plaintiffs, "like the putative class, allege that they were not paid overtime compensation for hours worked in excess of forty per week . . . . 'The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.'"); Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 200 (S.D.N.Y. 2011) ("As already established, Plaintiffs seek recovery stemming from the

---

[52/]    See also, e.g., Poplawski v. Metroplex on the Atl., LLC, No. 11-CV-3765, 2012 WL 1107711 at *9 (E.D.N.Y. Apr. 2, 2012) ("Absent class members will be adequately represented by the named plaintiffs.  Named plaintiffs allege a common policy or practice of failure to pay overtime and spread-of-hours premiums, as well as failure to pay wages in a timely manner.  Their claims will require similar legal and factual proof to those of absent class members. . . . There is no evidence that named plaintiffs' interests are not closely aligned with those of prospective class members."); Gonzalez v. Nicholas Zito Racing Stable Inc., No. 04 CV 22, 2008 WL 941643 at *6 (E.D.N.Y. Mar. 31, 2008) (No conflict where "the named plaintiffs seek the same relief as the members of the class: namely, to receive the unpaid wages owed to them by" defendants.); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 182 (W.D.N.Y. 2005) (Plaintiff's "claim that [defendant] failed to pay overtime compensation at the mandatory rate of time and one-half is the same claim raised by all class members.  I therefore find that the adequacy of representation requirement has been satisfied." (fn. omitted)); Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 344 (S.D.N.Y. 2004).

same unlawful conduct allegedly perpetrated by Defendants. . . . Adequacy of the representatives is established.").

The Court therefore finds that Spencer is an adequate class representative for both the overtime class and the notice subclass.  See, e.g., Assif v. Titleserv, Inc., No. 11-CV-3203, ---F.R.D. ----, 2012 WL 6212844 at *5 (E.D.N.Y. Dec. 13, 2012) ("The Court finds that the Plaintiff has satisfied . . . Rule 23(a)(4). . . . Plaintiff shares the same interests as the other full-time employees with respect to their [statutorily required notice] claims."); Guippone v. BH S & B Holdings LLC, 09 Civ. 1029, 2011 WL 1345041 at *7 (S.D.N.Y. Mar. 30, 2011) ("The first element of Rule 23(a)(4) is met in this case because, as set forth above, no divergence exists between the interests of the proposed Class Representative and the interests of the Class as a whole. [Plaintiff's] interest is exactly the same as that of any other employee who was entitled to [the statutory] notice.").

### c.     Spencer's Counsel Is Adequate

Rule 23(g) requires that the Court appoint class counsel based on a specific set of criteria. Fed. R. Civ. P. 23(g).  In appointing class counsel, the Court "'must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class.'" In re NTL, Inc. Sec. Litig., 02 Civ. 3013, 2006 WL 330113 at *11 n.18 (S.D.N.Y. Feb. 14, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 568225 (S.D.N.Y. Mar. 9, 2006).

NPT does "not contest Plaintiff's counsels' qualifications and capability to litigate this matter." (Dkt. No. 24: NPT Opp. Br. at 13.) Based on NPT's concession and Spencer's counsel's unchallenged assertions of, inter alia, their extensive experience litigating claims of this sort, the Court is satisfied that Spencer's counsel, Bronson Lipsky LLP and Gottlieb & Associates, will provide adequate representation to the class in this case. (Dkt. No. 22: Lipsky Aff. ¶ 3 & Ex. F: Gottlieb & Associates Description; Lipsky Aff. Ex. G: Bronson Lipsky LLP Description; Dkt. No. 21: Spencer Br. at 21.) See, e.g., Tiro v. Pub. House Invs., LLC, 11 Civ. 7679, 11 Civ. 8249, --- F.R.D. ----, 2012 WL 6053961 at *7 (S.D.N.Y. Dec. 4, 2012) ("There does not seem to be a real dispute concerning the adequacy of Plaintiffs' counsel. . . . Given . . . the fact that Defendants do not contest the adequacy of representation, I find no reason that Rule 23(a)(4) is not met."); see also, e.g., Silver v. 31 Great Jones Rest., 11 Civ. 7442, 2013 WL 208918 at *3 (S.D.N.Y. Jan. 4, 2013) (holding Bronson Lipsky LLP and Gottlieb & Associates satisfied Rule 23(g) and appointing them class counsel in an action to recover, inter alia, unpaid overtime wages); Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 200-01 (S.D.N.Y. 2011) ("There is no dispute that Plaintiffs' counsel are qualified and experienced in class action law and wage and employment litigation in New York. Counsel are hereby appointed class counsel." (citation omitted)).

### 5.   Rule 23(a)'s Implied Ascertainability Requirement

"'[T]he requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" Fogarazzo v. Lehman Bros., Inc., 263 F.R.D. 90, 97 (S.D.N.Y. 2009). "An identifiable class exists if its members can be ascertained by reference to objective criteria." Id. at 97 (quotations omitted).

It is easy to determine which parking assistants were employed by NPT during the relevant periods from NPT's own employment records.  See, e.g., Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 127 n.85 (S.D.N.Y. 2011) ("The class . . . is easily identified from [defendant's] payroll records.  Thus, the implied requirement of ascertainability is satisfied.").  Accordingly, while neither party directly addressed the ascertainability factor in their briefs, the Court finds that both the overtime class and notice subclass are sufficiently ascertainable to satisfy this implied requirement.  See, e.g., Niemiec v. Ann Bendick Realty, No. 04-cv-00897, 2007 WL 5157027 at *12 (E.D.N.Y. Apr. 23, 2007); Toure v. Cent. Parking Sys. of N.Y., 05 Civ. 5237, 2007 WL 2872455 at *8 (S.D.N.Y. Sept. 28, 2007) ("The putative class . . . is clearly defined and is limited to parking attendants who worked the night shift at One Penn Plaza from March 1, 2000 to March 30, 2006 and were denied overtime pay.  The Court finds that the putative class meets the ascertainability requirement of Rule 23."); Mentor v. Imperial Parking Sys., Inc., 246 F.R.D. 178, 184 (S.D.N.Y. 2007).

### 6.   Rule 23(b)(3) Predominance

#### a.   Predominance Standards

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  In re NTL, Inc. Sec. Litig., 02 Civ. 3013, 2006 WL 330113 at *12 (S.D.N.Y. Feb. 14, 2006) (Peck, M.J.) (quotations omitted, citing cases), report & rec. adopted, 2006 WL 568225 (S.D.N.Y. Mar. 9, 2006).[53/]  Ultimately, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed

---

[53/]    Accord, e.g., In re Am. Int'l Grp., Inc. Sec. Litig., 689 F.3d 229, 240 (2d Cir. 2012); N.J. Carpenters Health Fund v. Rali Series 2006-Q01 Trust, 477 F. App'x 809, 812 (2d Cir. (continued...)

classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc.

v. Windsor, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249 (1997).[54]

"Common issues may predominate when liability can be determined on a class-wide

basis, even when there are some individualized damage issues." In re NTL, Inc. Sec. Litig., 2006

WL 330113 at *12 (quotations omitted, citing cases).[55]  "When determining whether common

questions predominate courts focus on the liability issue . . . and if the liability issue is common to

the class, common questions are held to predominate over individual questions." In re NTL, Inc.

Sec. Litig., 2006 WL 330113 at *12 (quotations omitted).[56]

### b.   Predominance Is Established For The Overtime Class And The Notice Subclass

Spencer alleges that "it is Defendants' uniform policies not to pay overtime and not

to provide the 195.1 Notice that are the focus of any liability determination." (Dkt. No. 20: Spencer

Br. at 22-23; see also Dkt. No. 27: Spencer Reply Br. at 9.)  NPT counters that individual inquiries

will predominate, arguing:

---

[53]   (...continued)
2012); Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010), cert. denied, 132 S. Ct. 368 (2011); Fogarazzo v. Lehman Bros., Inc., 232 F.R.D. 176, 181-82 (S.D.N.Y. 2005).

[54]   Accord, e.g., Myers v. Hertz Corp., 624 F.3d at 547; In re NTL, Inc. Sec. Litig., 2006 WL 330113 at *12.

[55]   Accord, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 253 (2d Cir. 2011); Shayler v. Midtown Investigations, Ltd., 12 Civ. 4685, 2013 WL 772818 at *5 (S.D.N.Y. Feb. 27, 2013).

[56]   Accord, e.g., In re Lehman Bros. Sec. & ERISA Litig., 09 MD 2017, 2013 WL 440622 at *3 (S.D.N.Y. Jan. 23, 2013); Tiro v. Pub. House Invs., LLC, 11 Civ. 7679, 11 Civ. 8249, --- F.R.D. ----, 2012 WL 6053961 at *8 (S.D.N.Y. Dec. 4, 2012); see 5 Moore's Federal Practice § 23.45[2][a] (2013).

> Here, individual inquiries clearly predominate common questions of liability. Specifically, none of the parking assistants are required to work overtime and in fact sign agreements to not work over 40 hours a week. Further, the parking assistants create their own schedules, and keep track of their own hours. Thus, to the extent a parking assistant alleges to have worked any overtime hours, individual inquiries must be made to determine the circumstances under which he/she worked those overtime hours, as well as to resolve any possible discrepancies in their time sheets as to any overtime hours allegedly worked.

(Dkt. No. 24: NPT Opp. Br. at 13-14.)  NPT's argument essentially amounts to a list of factors that could affect the number of hours parking assistants worked, and thus the amount of unpaid overtime wages to which they would be entitled, i.e., damages issues, not liability issues.

NPT's argument is insufficient to defeat commonality where, as here, Spencer alleges that NPT has a uniform policy or practice of denying overtime compensation to its employees in violation of NYLL regulations.  See, e.g., Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012) (Carter, D.J.) ("The proposed class also satisfies Rule 23(b)(3).  Here, all members of the class are unified by common factual allegations that Defendant had a policy of not paying Class Members overtime premium pay for hours worked over 40 in a workweek . . . . They are also unified by a common legal theory—that these policies violated the NYLL.  These common issues predominate over any issues affecting only individual Class Mmbers."); Toure v. Cent. Parking Sys. of N.Y., 05 Civ. 5237, 2007 WL 2872455 at *8 (S.D.N.Y. Sept. 28, 2007) ("The Court finds that questions of law and fact—namely, the existence of an unlawful policy of denying overtime pay to parking attendants at One Penn Plaza—predominate over questions affecting only individual members."); Torres v. Gristede's Operating Corp., 04 Civ. 3316, 2006 WL 2819730 at *15-16 (S.D.N.Y. Sept. 29, 2006) ("Defendants contend that common questions do not predominate because the Court must inquire as to every employee . . . whether [the] employee was deprived of overtime wages by improper editing.  Defendants argue that this requires individualized

determinations for each employee, and, thus, individual questions predominate.  The Court finds, however, that Plaintiffs have introduced generalized proof on the issue of Defendants' liability. Plaintiffs have introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay.  This issue predominates over any individual calculations of overtime wages Defendants may owe, if liability is found." (citation omitted)); Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 345 (S.D.N.Y. 2004) ("Defendants argue that predominance is lacking because the determination of liability will depend on whether each employee . . . worked overtime hours for which compensation was not paid . . . . But defendants' argument fails because . . . the gravamen of the claim is that defendants engaged in a course of conduct that deprived employees of their right to overtime pay.  Although determinations as to damages . . . will require individualized findings, common liability issues otherwise predominate.").[57]

---

[57]    See also, e.g., Mendez v. Pizza on Stone, LLC, 11 Civ. 6316, 2012 WL 3133547 at *5 (S.D.N.Y. Aug. 1, 2012); Poplawski v. Metroplex on the Atl., LLC, No. 11-CV-3765, 2012 WL 1107711 at *11 (E.D.N.Y. Apr. 2, 2012) ("[P]redominance is satisfied because 'the central issue is whether the defendants had a uniform policy or practice of denying overtime . . . compensation to its employees.'"); Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. 100, 108 (E.D.N.Y. 2011); Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 200 (S.D.N.Y. 2011) ("Although individualized determinations must be made as to the amount of wages, overtime, and spread of hours pay each Plaintiff is due based on the hours projected for their shift and the number of hours worked, 'common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly predominate over these relatively simple, mechanical calculations.'"); Khait v. Whirlpool Corp., No. 06-6381, 2010 WL 2025106 at *3 (E.D.N.Y. Jan. 20, 2010) (Carter, M.J.); Niemiec v. Ann Bendick Realty, No. 04-cv-00897, 2007 WL 5157027 at *12 (E.D.N.Y. Apr. 23, 2007) ("[T]he proposed class members . . . claim not to have been paid the . . . overtime wages due to them by [defendant], based on [defendant's] alleged policy of not paying for any work performed in excess of forty hours per week.  The issues raised by these claims are subject to generalized proof, and predominate over individual issues . . . ."); Gonzalez v. Nicholas Zito Racing Stable Inc., No. 04 CV 22, 2008 WL 941643 at *7 (E.D.N.Y. Mar. 31, 2008) ("The predominant questions in this class action are whether Defendants failed to pay their [employees] . . . overtime wages and whether this alleged failure violated NYS Labor Law.  '[A] single issue predominates . . . because each proposed
(continued...)

Further, because NPT admits that all parking assistants are subject to the same policies and procedures, including the terms of the Worker's Agreement (see page 6 above), defenses purportedly based on the "circumstances under which [parking assistants] worked those overtime hours" would necessarily succeed or fail on a classwide basis.  See, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 253 (2d Cir. 2011) (finding predominance requirement satisfied where defendant "has not denied that all servers were subject to its uniform [pay] practices" since a finding that defendant's practices are illegal means that "each of the class plaintiffs will likely prevail on his or her [state law] claims, although class plaintiffs' individualized damages will vary"); Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. at 107-08; Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. at 200 ("Like commonality, predominance is not defeated by the fact that potential plaintiffs worked [under varying circumstances] . . . where, as here, Defendants admit that the pay policy was identical."); Morangelli v. Chemed Corp., 275 F.R.D. 99, 115 (E.D.N.Y. 2011) (Defendants' "argument only highlights another commonality—identical or substantially similar employment contracts between defendants and their commissioned technicians.").[58]

---

[57]   (...continued)
class member did substantially the same type of work, for the same type of employer, and was assigned in the same sort of way, during the relevant time period.'  Therefore, common questions of liability clearly predominate over individual inquiries." (citations omitted)); Mentor v. Imperial Parking Sys., Inc., 246 F.R.D. 178, 184 (S.D.N.Y. 2007); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373 (S.D.N.Y. 2007); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 183 (W.D.N.Y. 2005) ("I find that common questions of law and fact predominate over any questions affecting individual class members.  All members of the class assert that they . . . were not paid overtime wages for hours worked in excess of forty hours per week in violation of the FLSA and New York Labor Law.").

[58]   Similarly, the predominance of classwide issues is not diminished by the fact that NPT expressly admitted to many common questions including, for example, whether parking assistants are employees for purposes of NYLL (see page 2 n.2 above), whether NPT ever pays overtime premium wages (see page 6 above), and whether NPT's policies are applied
(continued...)

Finally, as with the previously discussed factors, there is no merit to NPT's argument that class certification should be denied because some parking assistants may not have worked any overtime.  The legality or illegality of defendants' practices and procedures utilized to implement their no overtime policy are susceptible to common proof, thus satisfying the predominance requirement.  See, e.g., Morangelli v. Chemed Corp., No. 10 Civ. 0876, --- F. Supp. 2d ----, 2013 WL 432571 at *23 (E.D.N.Y. Feb. 4, 2013); Morangelli v. Chemed Corp., 275 F.R.D. at 113-14 ("Even if a witness had to spend considerable time testifying on the time records from the branches of all 13 states, the common issues—e.g., the time records, the performed jobs, rate of pay, the alleged practice of time-shaving—will still dominate the inquiry, as one witness can potentially testify regarding all of the records.").[59]

Accordingly, the Court finds that Spencer has satisfied the predominance requirement.

_____

[58]     (...continued)
uniformly to all parking assistants (see page 6 above).  See, e.g., In re Nassau Cnty. Strip Search Cases, 461 F.3d 219, 228 (2d Cir. 2006) ("That the class-wide proof comes in the form of a simple concession rather than contested evidence certainly shortens the time that the court must spend adjudicating the issue, but it does nothing to alter the fundamental cohesion of the proposed class, which is the central concern of the predominance requirement."); Morangelli v. Chemed Corp., 275 F.R.D. at 109 ("As Nassau County teaches, this concession does not make the common element any less prominent.").

[59]     See also, e.g., Nobles v. State Farm Mut. Auto. Ins. Co., No. 10-CV-04175, 2011 WL 3794021 at *6-7 (W.D. Mo. Aug. 25, 2011); Noble v. 93 Univ. Place Corp., 224 F.R.D. at 345 ("[D]efendants' argument fails because the issues that are subject to generalized proof predominate over those issues premised on individualized findings.  Specifically, the class action is based on defendants' alleged policy of requiring employees to work overtime hours without adequate compensation.  Thus, to prevail on the merits of this claim, plaintiffs must produce evidence that defendants implemented an illegal policy with respect to overtime pay.").

### 7.   Rule 23(b)(3) Superiority

#### a.   Superiority Standards

Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to the Court's inquiry into the superiority of a class action:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); see generally 5 Moore's Federal Practice § 23.46[2][a] (2013).

#### b.   Superiority Is Established For The Overtime Class And The Notice Subclass

Where, as here, all class members' allegations are based on uniform policies and practices giving rise to predominantly common questions of fact and law, a class action is superior. See, e.g., Mendez v. Pizza on Stone, LLC, 11 Civ. 6316, 2012 WL 3133547 at *5 (S.D.N.Y. Aug. 1, 2012) ("Given the predominance of common questions and a class that may potentially number greater than 100 individuals, a class action is superior to other available methods for hearing state wage and hour claims against [defendant]."); Flores v. Anjost Corp., 284 F.R.D. 112, 131 (S.D.N.Y. 2012) ("'Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy . . . .'"); Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 200 (S.D.N.Y. 2011).

Additionally, a class action is superior because parking assistants who worked relatively few overtime hours would be unlikely to initiate individual actions to recover potentially small awards. See, e.g., Flores v. Anjost Corp., 284 F.R.D. at 131 ("'Courts routinely hold that a class action is superior where . . . the damages suffered are small in relation to the expense and burden of individual litigation . . . .'"); Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. 100, 108 (E.D.N.Y. 2011); Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. at 200; Niemiec v. Ann Bendick Realty, No. 04-cv-00897, 2007 WL 5157027 at *13 (E.D.N.Y. Apr. 23, 2007); Torres v. Gristede's Operating Corp., 04 Civ. 3316, 2006 WL 2819730 at *16 (S.D.N.Y. Sept. 29, 2006) ("Because litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually."); Frank v. Eastman Kodak Co., 228 F.R.D. 174, 183-84 (W.D.N.Y. 2005) ("I find that class representation is both a superior method of adjudication and indeed may be vital to a successful resolution of this matter. . . . [M]any of the class members worked relatively few overtime hours and thus are expecting a recovery of less than one thousand dollars each.  It is unlikely that these such plaintiffs would be willing to file individual lawsuits and incur the expenses of litigation for such a small award.  Therefore, without the economic benefit of class representation, many of the plaintiffs would be forced to forego compensation to which they are entitled."); Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 346 (S.D.N.Y. 2004).[60]

---

[60]    This is particularly true since the class is made up of low income parking assistants.  (See page 31 n.38 above.)  See, e.g., Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012) (Carter, D.J.) ("Class adjudication of this case is superior to individual adjudication because . . . Plaintiffs and Class Members have limited financial resources with which to prosecute individual actions."); Khait v. Whirlpool Corp., No. 06-6381, 2010 WL 2025106 at *3 (E.D.N.Y. Jan. 20, 2010) (Carter, M.J.); Niemiec v. Ann Bendick Realty, 2007 WL 5157027 at *13 ("the interests of the class members as a whole favor prosecution of their claims as a single class action" where class members have "limited means"); Gonzalez v. Nicholas Zito Racing Stable Inc., No. 04 CV 22, 2008 WL 941643 at *8
(continued...)

Furthermore, in light of Spencer's retaliation claim (see pages 2, 31-32 above), the fact that some potential class members remain employed by NPT and may fear retaliation suggests that class resolution is superior.  See, e.g., Flores v. Anjost Corp., 284 F.R.D. at 131 ("'Courts routinely hold that a class action is superior where . . . many potential class members are currently employed by Defendant.'"); Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. at 108; Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. at 200; Torres v. Gristede's Operating Corp., 2006 WL 2819730 at *16 ("[S]ince some class members are still employees of Defendants', class members may fear reprisal and would not be inclined to pursue individual claims."); Noble v. 93 Univ. Place Corp., 224 F.R.D. at 346.

Finally, the desirability of concentrating the NYLL class claims in this forum is established by the parallel FLSA claims that will be collectively litigated here.  See, e.g., Poplawski v. Metroplex on the Atl., LLC, No. 11-CV-3765, 2012 WL 1107711 at *11 (E.D.N.Y. Apr. 2, 2012) ("In this case, 'a class action is superior to other available methods, given that the New York Labor Law claims are nearly identical to the FLSA claims, which will be tried collectively in this Court.'"); Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. at 108; Torres v. Gristede's Operating Corp., 2006 WL 2819730 at *16 ("The class action device also allows the Court to be flexible in accommodating Plaintiffs' FLSA claims with state claims.").

\* \* \* \*

---

60/     (...continued)
(E.D.N.Y. Mar. 31, 2008) ("The class members in this case have no strong interest in individually controlling the litigation because it is unlikely that a member of the class, which is made up primarily of workers with limited resources . . . , would bring an individual suit."); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373 (S.D.N.Y. 2007) ("The proposed class members are almost exclusively low-wage workers with limited resources . . . . It is extremely unlikely that they would pursue separate actions.").

For the reasons stated above, the Court should certify the class action for the overtime claim along with a notice subclass.

## IV.   COLLECTIVE AND CLASS ACTION NOTICE

### A.   Form And Content Of Combined Notice Under The FLSA And NYLL

Spencer's motion included a proposed Notice under the FLSA and the NYLL.  (Dkt. No. 22: Lisky Aff. Ex. E.)  NPT did not address the Notice at all in its opposition papers.  (See generally Dkt. No. 24: NPT Opp. Br.)  Nevertheless, the Court has re-defined the class (because the subclass is for a more limited time period), and therefore Spencer will need to revise the Proposed Notice.  In accordance with this Report & Recommendation, "the parties shall submit a joint proposed notice to the Court for approval in order to ensure that the drafting and distribution of the notice is timely, accurate, and informative."  Flores v. Anjost Corp., 284 F.R.D. 112, 131 (S.D.N.Y. 2012); accord, e.g., Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 2574742 at *12 (S.D.N.Y. June 29, 2012) (Carter, D.J.) ("'By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed.'").[61/]

The parties shall jointly submit a revised proposed Notice within seven days of the date of this Report & Recommendation, i.e., by March 22, 2013.  If the parties cannot agree, they shall submit competing proposed Notices (preferably in the form of a single Notice showing where

---

[61/]   See also, e.g., Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010), cert. denied, 132 S. Ct. 368 (2011); Limarvin v. Edo Rest. Corp., 11 Civ. 7356, 2013 WL 371571 at *2 (S.D.N.Y. Jan. 31, 2013) ("'Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action.'"); Raniere v. Citigroup Inc., 827 F. Supp. 2d 294, 326-27 (S.D.N.Y. 2011); Cano v. Four M Food Corp., No. 08-CV-3005, 2009 WL 5710143 at *8 (E.D.N.Y. Feb. 3, 2009).

the parties agree and each side's proposed language where they disagree).  The Court expects the parties to cooperate, but in the event of a dispute, the Court likely will lean toward Spencer's proposal, since NPT did not address the Notice issue when it had the opportunity in connection with this motion.

**B.**     **Production Of Potential Class Members' Information**

Spencer also seeks an order compelling NPT to disclose an updated list, in electronic form, of identification information for all current and former employees who fall within the class definitions, "including their name, job title, address, telephone number, email address, dates of employment, location of employment, date of birth, and last four digits of their Social Security number." (Dkt. No. 20: Spencer Br. at 15-16.)  NPT did not oppose this request (See generally Dkt. No. 24: NPT Opp. Br.; see also Dkt. No. 27: Spencer Reply Br. at 10), and courts routinely order the disclosure of such information to facilitate distribution of the Notice.[62]   Accordingly, NPT is ordered to produce the requested information, in electronic format, within seven days of the date of this Report & Recommendation.

**C.**     **Posting Of The Notice And Consent Forms**

Spencer asks the Court to order NPT to post "the Notice, along with the consent forms at each place of employment." (Dkt. No. 19: Notice of Motion; Dkt. No. 20: Spencer Br. at

---

[62]     See, e.g., Amador v. Morgan Stanley & Co., 11 Civ. 4326, 2013 WL 494020 at *10 (S.D.N.Y. Feb. 7, 2013); Sanchez v. Gansevoort Mgmt. Grp., Inc., 12 Civ. 75, 2013 WL 208909 at *2 (S.D.N.Y. Jan. 10, 2013); Arpi v. Sternbach Holdings, LLC, 12 Civ. 6764, 2012 WL 6200909 at *2 (S.D.N.Y. Dec. 10, 2012); Morris v. Lettire Constr., Corp., 12 Civ. 0043, --- F. Supp. 2d ----, 2012 WL 4320462 at *8 (S.D.N.Y. Sept. 18, 2012); Raniere v. Citigroup Inc., 827 F. Supp. 2d 294, 327-28 (S.D.N.Y. 2011); Fang v. Zhuang, No. 10-CV-1290, 2010 WL 5261197 at *4 (E.D.N.Y. Dec. 1, 2010); Cano v. Four M Food Corp., No. 08-CV-3005, 2009 WL 5710143 at *11 (E.D.N.Y. Feb. 3, 2009); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 370 (S.D.N.Y. 2007); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91, 100 (E.D.N.Y. 2003).

16.)  NPT did not oppose this request (See generally Dkt. No. 24: NPT Opp. Br.; see also Dkt. No. 27: Spencer Reply Br. at 10), and numerous courts have ordered the posting of notice and consent forms to facilitate notification to potential opt-in plaintiffs.  See, e.g., Limarvin v. Edo Rest. Corp., 11 Civ. 7356, 2013 WL 371571 at *3 (S.D.N.Y. Jan. 31, 2013); Arpi v. Sternbach Holdings, LLC, 12 Civ. 6764, 2012 WL 6200909 at *2 (S.D.N.Y. Dec. 10, 2012); Fang v. Zhuang, No. 10-CV-1290, 2010 WL 5261197 at *5 (E.D.N.Y. Dec. 1, 2010).

Accordingly, NPT is ordered to post the Court-approved notice and consent forms at NPT's office(s), within seven days of the Court's approval of the Notice's form.

## CONCLUSION

For the reasons set forth above, Spencer's motion (Dkt. No. 19) should be GRANTED as modified herein, and the parties shall provide the Notice-related information as required by Point IV above.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Andrew L. Carter, Jr., 40 Foley Square, Room 435, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Carter (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984

65

F.2d 85, 89 (2d Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S.

1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir.

1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy</u> v. <u>Manson</u>, 714 F.2d

234, 237-38 (2d Cir. 1983).

Dated:         New York, New York
               March 15, 2013

                                        Respectfully submitted,

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge

Copies **by ECF** to:      All Counsel
                           Judge Andrew L. Carter, Jr.