UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DARRELL K. SPENCER, Individually and on
Behalf of All Other Persons Similarly Situated,

Plaintiff,

v.

NO PARKING TODAY, INC. and CLAYTON
THOMAS, Jointly and Severally,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>ECF CASE</u>

1:12-cv-6323 (ALC) (AJP)

---

## MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF AND CLASS MEMBERS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT, APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT, AND SCHEDULING OF A FINAL FAIRNESS HEARING

---

Douglas B. Lipsky
BRONSON LIPSKY LLP
630 Third Avenue, Fifth Floor
New York, New York 10017-6705

Jeffrey M. Gottlieb
Dana L. Gottlieb
GOTTLIEB & ASSOCIATES
150 East 18th Street, Suite PHR
New York, New York 10003

*Attorneys for Plaintiff and the Class Members*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

I.      FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

        A.      The Parties ............................................................................................... 2

        B.      Relevant Procedural History ................................................................... 2

        C.      Investigation and Discovery .................................................................... 5

        D.      Settlement Negotiations ........................................................................... 5

II.     SUMMARY OF THE SETTLEMENT TERMS ................................................. 6

        A.      Settlement Class Members and Authorized Claimants............................. 6

        B.      Settlement Considerations ....................................................................... 6

        C.      Release of Claims And Claim Form ......................................................... 9

        D.      Settlement Claims Administration............................................................ 9

III.    CLASS ACTION SETTLEMENT PROCEDURE ............................................ 10

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS
        APPROPRIATE................................................................................................. 11

        A.      The Settlement Is Fair, Reasonable and Adequate ................................. 12

V.      THE COURT HAS ALREADY GRANTED CLASS CERTIFICATION AND
        APPOINTED PLAINTIFF'S COUNSEL AS CLASS COUNSEL ..................... 17

VI.     THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND CLAIM
        FORM ............................................................................................................... 18

VII.    THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING ......... 19

VIII.   THE CLASS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT......... 19

CONCLUSION............................................................................................................. 20

CASES

*Campos v. Goode*,
No. 10-cv-0224 (DCF), 2010 U.S. Dist. LEXIS 13913 (S.D.N.Y. Nov. 29, 2010) ......... 15

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)................................................................................... 12, 17

*Clark v. Ecolab, Inc.*,
No. 04-cv-4488 (PAC), 2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009) ....... 11

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)........................................................................................... 13

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005).................................................................... 12, 15, 16

*In re AOL Time Warner ERISA Litig.*,
No. 02-cv-8853 (SWK), 2006 U.S. Dist. LEXIS 70474 (S.D.N.Y. Sept. 27, 2006)........ 14

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................................ 13

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05-cv-10240 (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007).......... 12

*In re Ira Haupt & Co.*,
304 F. Supp. 917 (S.D.N.Y. 1969) ............................................................................... 15

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ................................................................................... 19

*In re Painewebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................................. 15

*In re Traffic Executive Ass'n*,
627 F.2d 631 (2d Cir. 1980)......................................................................................... 11

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......................................................................... 14

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1998).......................................................................................... 11

*McMahon v. Olivier Cheng Catering & Events*,

No. 08-cv-8713 (PGG), 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 3, 2010) ........... 19

*Silver v. 31 Great Jones Rest.*,
No. 11-cv-7442 (KMW) (DCF), 2013 U.S. Dist. LEXIS 7821
(S.D.N.Y. Jan. 4, 2013) ................................................................................................. 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ........................................................................................... 11

RULES

Fed. R. Civ. P. 23(e) ..................................................................................................... 10

TREATISES

Herbert B. Newberg & Alba Conte, Newberg on Class Actions (4th ed. 2002) ........ 10, 12

Manual for Complex Litigation (4th Ed.) ...................................................................... 19

Plaintiff and the Class Members (collectively the "Class" or "Class Members") submit this Memorandum of Law in support of their Motion for preliminary approval of the class action settlement agreement, approval of the proposed notice of settlement, and scheduling of a final fairness hearing (the "Motion").

<u>PRELIMINARY STATEMENT</u>

Plaintiff Darrell K. Spencer initiated this lawsuit against Defendants No Parking Today, Inc. and Clayton Thomas to recover the unpaid overtime Defendants owe him and the class and collective action members under the Fair Labor Standards Act and New York Labor Law, to recover unreimbursed expenses, to recover civil penalties for Defendants' recordkeeping violations, and to assert individual retaliation claims.

Subject to the Court's approval, Plaintiff Spencer, the Class Members and Defendants (collectively the "Parties") have settled this wage and hour class and collective action for $450,000.00. The proposed settlement satisfies all of the criteria for preliminary approval. The Class therefore respectfully requests the Court (1) grant preliminary approval of the Agreement and General Release[1]; (2) approve the proposed Notice of Proposed Class Action Lawsuit Settlement and Final Fairness Hearing and Individual Settlement Class Member Claim Form; and (3) schedule a final Fairness Hearing. Defendants do not oppose this Motion.

---

[1] Douglas B. Lipsky's June 30, 2014 Declaration ("Lipsky Dec."), Ex. A.

I.     FACTUAL AND PROCEDURAL BACKGROUND

    A.     The Parties

Defendant Thomas is the President of Defendant No Parking Today, Inc.[2] Consolidated Edison, Inc. contracts with No Parking Today to send its parking assistants to ConEd job sites where they set up cones so ConEd employees can perform their work unencumbered.[3] Defendants employed Plaintiff Spencer as a parking assistant since October 2009.[4]

    B.     Relevant Procedural History

On August 17, 2012, Spencer filed the Complaint on behalf of himself and all individuals whom Defendants employ and have employed as parking assistants since August 13, 2006,[5] in which he alleges Defendants failed to pay them overtime for every hour they worked above forty (40) in a week under the following practice:  Defendants paid the parking assistants a maximum of eighty (80) hours for every two weeks; they would allocate any hour they worked above eighty (80) to the following two-week pay period; and Defendants paid them straight time for all eighty (80) hours – even when they worked more than forty (40) hours in a week.[6]  Spencer also alleges Defendants failed to provide the wage and hour notice required under NYLL § 195.1 ("NYLL 195.1 Notice") between January 1 and February 1 of each year,[7] failed to reimburse them for gas and

---

[2] August 17, 2012 Class and Collective Action Complaint (Dkt. No. 1) ("Compl.") ¶¶ 9, 26-27); Defendants' November 14, 2012 Answer (Dkt. No. 13) ("Ans") ¶¶ 9, 26-27.
[3] Compl. ¶¶ 26, 29.
[4] Compl. ¶ 28; Ans. ¶ 28.
[5] Compl. ¶¶ 13, 19.
[6] *Id*. ¶¶ 42-45.
[7] *Id.* ¶ 50.

tolls, and deducted from their wages lost or damaged cones[8]. He finally alleges Defendants unlawfully reduced his hours after complaining of their overtime policy.[9] The Complaint thus asserts four causes of action on behalf of the then putative class and collective action members: unpaid overtime under the FLSA and NYLL (First and Second Causes of Action); failure to provide the NYLL 195.1 Notice after January 1, 2012 (Third Cause of Action); and unlawful deductions under the NYLL (Fourth Cause of Action). It also asserts individual FLSA and NYLL retaliation claims (Fifth and Sixth Cause of Action). In their November 14, 2012 Answer, Defendants denied any wrongdoing, asserted seventeen (17) affirmative defenses, and indicated their intent to vigorously defend against these allegations.[10]

On March 15, 2013, the Honorable Andrew J. Peck, U.S.M.J., issued a Report and Recommendation ("R&R") granting Plaintiff's January 22, 2013 motion to conditionally certify the FLSA collective action under 29 U.S.C. § 216(b), for the authorization of a notice to the collective action members, to certify under Rule 23 (a) and (b)(3) a class of individuals asserting claims of unpaid overtime under the NYLL and failure to provide the NYLL 195.1 Notice, and to appoint Bronson Lipsky LLP and Gottlieb & Associates as class counsel under Rule 23(g) ("Class Counsel").[11] In granting this relief, the Court certified a class for those asserting unpaid overtime violations (the "overtime class"): current and former employees of No Parking today who are or were employed as a parking assistant or reserve parker at any time between August 13, 2006 and the present.

---

[8] *Id.* ¶¶ 32-35. Plaintiff learned during discovery that these alleged expenses did not reduce their wages below the statutory minimum and that no parking assistant was charged for a lost or damaged cone.
[9] *Id.* ¶¶ 51-53.
[10] Ans.
[11] Dkt. No. 29.

Recognizing that only overtime class members who were employed after January 1, 2012 could assert claims regarding the NYLL 195.1 Notice, the Court certified a subclass for Defendants alleged failure to provide this notice (the "notice subclass"): current and former employees of No Parking Today who are or were employed as a parking assistant or reserve parker at any time between January 1, 2012 and the present. Neither party filed any objections to the R&R by the April 1, 2014 deadline, and it was accordingly adopted by The Honorable Andrew L. Carter, Jr.[12] Between April 1 and 4, 2013, Plaintiff mailed the Court-authorized notice to the 204 putative collective action members Defendants identified.[13] The notice was subsequently mailed to the additional 862 individuals whom Defendants omitted from their prior list.[14] In total, 98 timely opt-in forms[15] and 12 exclusion requests[16] were submitted and filed with the Court.

A few hours after the August 5, 2013 settlement conference before Magistrate Judge Peck, Plaintiff Spencer was arrested while driving to a job assignment for No Parking Today and was subsequently and remains incarcerated in the Westchester Correctional Facility. To avoid his uncertain availability from delaying this matter, on September 9, 2013, the Court granted the Class's August 27, 2013 request that it exercise its inherent authority to add three class representatives under Rule 23(a)(4): Andrew Banfield, Lithaniel Singleton and Gilmore Thompson.[17]

---

[12] Dkt. No. 98.
[13] Dkt. No. 33.
[14] May 2, 2013 Minute Entry; Dkt. No. 70.
[15] Dkt Nos. 34, 36-38, 41, 45-48, 51, 53-55, 58, 60, 64-68, 72, 73-91, 93-94, 110-114, 116-118, 120-150, 152-158.
[16] Dkt. Nos. 35, 39-40, 42-44, 49-50, 56, 59, 61-62, 63, 92, 95-97, 115, 119, 151.
[17] Dkt. Nos. 170, 171.

C. <u>Investigation and Discovery</u>

Before and after Defendants filed their Answer, Class Counsel thoroughly investigated the events and transactions underlying Plaintiff and the Class Members' claims, which included interviewing the Plaintiff, deposing No Parking Today's Rule 30(b)(6) designee (Defendant Thomas), Defendants deposing the Class Representatives, and the Class obtaining through formal discovery Defendants' payroll and time keeping policies.[18] Class Counsel was thereby able to analyze the strengths and weaknesses of the claims.[19] In determining to settle this matter, Counsel also considered the substantial expense and length of time necessary to prosecute the litigation through trial, post-trial motions and likely appeals, taking into consideration the significant uncertainties in predicting the outcome of this complex litigation.[20]

D. <u>Settlement Negotiations</u>

The parties resolved this case with the valuable assistance of the Court-appointed mediator, The Honorable Kathleen A. Roberts (Ret.).[21] Prior to the mediation, the Class submitted a detailed *ex parte* mediation statement that explained their damages calculations, and presented responses to Defendants' defenses.

On January 28 and February 7, 2014, the Parties attended all-day mediation sessions, during which the parties vigorously debated the claims and defenses, reviewed Defendants' time, wage, and financial records. As questions remained regarding Defendants' financial condition, following the March 7, 2014 status conference with the

---

Lipsky Dec. ¶¶ 4-7.
[19] *Id.* ¶ 6.
[20] *Id.* ¶ 7.
[21] December 3, 2013 Minute Entry.

Court, Defendants provided additional financial records,[22] which Class Counsel's forensic accountant reviewed. The parties reached a settlement in principle after these remaining documents were produced. It was not, however, until June 23, 2014 when the Parties agreed upon and fully-executed the Settlement Agreement.[23]

## II.    SUMMARY OF THE SETTLEMENT TERMS

### A.    Settlement Class Members and Authorized Claimants

The settlement covers a defined group: all individuals whom Defendants have employed or are employing who hold or held the title of "parking assistant" or "reserve parker" at any time from August 13, 2006 to February 7, 2014 ("Settlement Class Member").[24] An "Authorized Claimant" is any Settlement Class Member who submits a timely and valid Claim Form within the sixty (60) day claim period and is thereby entitled to receive a settlement payment under the Settlement Agreement.[25]

### B.    Settlement Considerations

The settlement considerations Defendants are providing under the Settlement Agreement are largely two-fold.

#### 1.    Settlement Fund and Settlement Calculations

The Settlement Agreement creates a gross settlement sum of $450,000.00 to settle this case (the "Gross Settlement Sum").[26] The "Net Settlement Sum" means the Gross Settlement Sum less the amounts awarded to Class Counsel for attorneys' fees and reimbursable expenses, the service awards to Spencer and the three Class

---

[22] Dkt. No. 188.
[23] Lipsky Dec. Ex. A, Settlement Agreement ¶ 8.
[24] *Id.* ¶ 3.
[25] *Id.* ¶ 3.
[26] *Id.* ¶ 25.

Representatives, and Spencer's settlement payment for his individual claims.[27] 25% of any funds unclaimed after the claims period (*i.e.*, the "Reversion") will be distributed to the Authorized Claimants on a *pro rata* basis.[28]

The Authorized Claimants' settlement payments depend on two calculations: their individual settlement payment calculation and the reversion payment calculation. The individual payment is calculated using the following formula: the total number of weeks worked by the Authorized Claimant is divided by the total weeks worked by all Settlement Class Members to obtain a percentage of the weeks worked during the settlement period; and this percentage is multiplied by the Net Settlement Sum to obtain the appropriate dollar amount allocated to that Authorized Claimant.[29] This calculation does not consider any Class Members' civil penalty for Defendants alleged failure to provide the NYLL 195.1 Notice between January 1 and February 1 of each year, as the Class recognizes courts are now holding no private action exists for this claim. *See, e.g., Guan Ming Lin v. Benihana N.Y. Corp.*, 10-cv-1335 (RA) JCF), 2012 U.S. Dist. LEXIS[30] 186526, at *23 (S.D.N.Y. Oct. 23, 2012). The reversion payment is calculated under the following formula: an Authorized Claimant's Individual Settlement is divided by the total Individual Settlements for every Authorized Claimant; and this percentage is multiplied by 25% of the Reversion to calculate each Authorized Claimant's share of the

---

[27] *Id.* ¶ 26.

[28] *Id.* ¶ 32.

[29] *Id.* ¶ 48.a.

[30] Class counsel recognizes the Court's Individual Practice Rule 2.H. requires Westlaw citations to be provided for cases not available in an official reporter. This firm, however, has a subscription only with Lexis. We apologize for any inconvenience this may cause.

Reversion.[31]  The total amount Authorized Claimants will receive is their individual payment plus their reversion payment.

Defendants shall have 1,170 calendar days, approximately 3.5 years, to satisfy the Gross Settlement Sum in full: the first payment shall be due 30 calendar days from Final Effective Date; each subsequent payment shall be made 180 calendar days from the prior payment; a total of eight payments will be made.[32]  To provide security for this structured payment, Defendants have executed a Consent Judgment in the event they default on any payment, which makes Defendant Thomas personally liable for any default, and contains acceleration and penalty provisions.[33]

Aside from the Named Plaintiff and the Class Representatives, the settlement payments will be made in the order the Authorized Claimants submit their Claim Forms to the Claims Administrator.[34]

### 2. Payment of Attorneys' Fees, Litigation Costs and Service Payments

Class Counsel seeks an attorneys' fees award of 33.33% of the Gross Settlement Sum that equals $150,000.00,[35] and an award of $3,275.91 for reimbursable expenses.[36] Counsel will move under Fed. R. Civ. P. 23(h) and 54(d)(2) for attorneys' fees and costs along with their motion for final approval of the settlement.

In addition to their individual awards under the allocation formula, the Class will apply for service awards of $10,000 to the Named Plaintiff and $7,500 to each Class

---

[31] Settlement Agreement ¶ 48.b.
[32] *Id.* ¶ 50.
[33] *Id.* ¶ 52.a.
[34] *Id.* ¶ 58.b.
[35] *Id.* ¶¶ 10, 47.a.
[36] *Id.* ¶¶ 11, 47.b.

Representative in recognition of the services they rendered on behalf of the Class.[37]  The Court need not rule on the proposed service awards now, as the Class will seek Court approval of the service payments with their motion for final approval of the settlement.

## C.    Release of Claims And Claim Form

The Settlement will be on a claims-made basis: settlement payments will be distributed only to Authorized Claimants.[38]  Settlement Class Members will be given a full opportunity to request to be excluded from the Settlement[39] and to file any objections[40] to it.  Any Class Member who does not timely and properly request to be excluded from the Agreement will therefore be bound by its terms[41] and release all NYLL wage and hour claims[42] against the Released Parties[43].  Additionally, they will opt-in to the FLSA collective action (to the extent they have not already done so) and release their FLSA claims by completing a "Claim Form," which describes the claims they are releasing, and identifies the specific amount they will receive under the Agreement.[44]

## D.    Settlement Claims Administration.

The parties have agreed to use third-party claims administrator Simpluris Inc. to perform all of the administrative duties in the Settlement Agreement, including mailing

---

[37] *Id.* ¶¶ 36, 47.c.
[38] *Id.* ¶¶ 3, 54.
[39] *Id.* ¶ 56.
[40] *Id.* ¶ 57.
[41] *Id.* ¶ 56.
[42] *Id.* ¶ 46.a.
[43] *Id.* ¶ 34.
[44] *Id.* ¶¶ 23-24, 46.a.

the Settlement Notice and Claim Form, and distributing the settlement payments.[45]   The

associated cost is to be paid from 75% of the Reversion, to the extent it can fully satisfy

it.  If the expenses exceed the 75%, Defendants shall satisfy the difference.[46]

III.     CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.     Preliminary approval of the proposed settlement after submission to the
Court of a written motion for preliminary approval;

2.     Dissemination of notice of settlement to all Class Members; and

3.     A final settlement approval hearing at which Class Members may be
heard, and at which argument concerning the fairness of the settlement
may be presented.

See Fed. R. Civ. P. 23(e); see also Herbert B. Newberg & Alba Conte, Newberg on Class

Actions ("Newberg"), §§ 11.22, et seq. (4th ed. 2002).   With this Motion, the Class

requests the Court to take the first step in the approval process by granting preliminary

approval of the Settlement Agreement, approving and authorizing the distribution of the

proposed Settlement Notice and Claim Form, and scheduling a fairness hearing.

The Parties respectfully submit the following proposed schedule for final

resolution of this matter for the Court's consideration and approval:

1.     Settlement Class Members will have sixty (60) calendar days from the
initial mailing of the Settlement Notice and Claim Form to submit to the
Claims Administrator their claim forms or opt-out requests, and to file
with the Court any objections to the Settlement ("Notice Period").[47]

2.     A final fairness hearing will be held for the Court to determine whether to
grant final approval of the Agreement.[48]

---

[45] Id. ¶ 8.
[46] Id. ¶ 32.
[47] Id. ¶ 53.f.
[48] Id. ¶ 20.

3.   The "Final Effective Date" of the Settlement Agreement will be the first date after all of the following events have occurred or conditions have been met: (i) the Court enters an Order Authorizing Notice of the Proposed Settlement and Notice of Final Fairness Hearing; (ii) the Bar Date passes; (iii) the Court enters a Final Approval Order; (iv) the deadline passes without action for counsel for the Parties to terminate the Agreement; (v) the time to appeal from the Final Approval Order expires and no Notice of Appeal is filed or in the event that an appeal is filed, the appellate process is exhausted and the Final Approval Order remains intact in all material respects; and (vi) the Final Fairness Hearing occurs.[49]

## IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).

Preliminary approval, which is what the Class seeks here, requires only an "initial evaluation" of the proposed settlement's fairness on the basis of written submissions and an informal presentation by the settling parties. *Clark v. Ecolab, Inc.,* No. 04-cv-4488 (PAC), 2009 U.S. Dist. LEXIS 108736, at *14 (S.D.N.Y. Nov. 17, 2009) (citing Newberg § 11.25). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980). If, after a preliminary evaluation of the proposed settlement, the court finds that it "appears to fall

---

[49] *Id.* ¶ 19.

within the range of possible approval," the court should order that Class Members receive notice of the settlement. *Clark*, 2009 U.S. Dist. LEXIS at *15.

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores,* 396 F.3d at 116 (internal quotations omitted). Accordingly, if the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue to the Class Members to inform them of the settlement, and gives them an opportunity to complete and return a claim form, object to the settlement or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input.

A.    The Settlement Is Fair, Reasonable and Adequate

Courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) in evaluating a class action settlement. Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation" to determine whether the settlement falls within the range

of possible final approval, or "the range of reasonableness," it is useful for the Court to consider the criteria on which it will ultimately judge the settlement. Newberg §§ 11.25, 11.26. The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

1.      Litigation Through Trial Would Be Complex, Costly and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, the Class seeks to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with more than 1,000 Class Members.

Although there has been meaningful formal discovery, additional litigation would be required to establish liability and damages, including the Class would likely move for summary judgment, and Defendants would likely cross move for summary judgment on

their defenses.[50]  If the Court denied the motions, a fact-intensive trial would be necessary to determine liability and damages.  A complicated trial would consume tremendous amounts of time and resources for both sides.  And Defendants would likely appeal any judgment, further extending the litigation.  This settlement, however, makes monetary relief available to Class Members in a relatively prompt and efficient manner.  The first *Grinnell* factor favors preliminary approval.

### 2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  Based on communications with Plaintiff, the Class Representatives and other Class Members, Counsel expects the Class Members to react favorably to the Settlement Agreement.[51]  In any event, because the Settlement Notice has not yet been mailed, the Court will be better able to fully analyze this factor after the Notice has been mailed and after their deadline to object or "opt out."

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibility (*Grinnell* Factor 3).

"The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."  *In re AOL Time Warner ERISA Litig.*, No. 02-cv-8853 (SWK), 2006 U.S. Dist. LEXIS 70474, *21-22 (S.D.N.Y. Sept. 27, 2006).  Neither the lack of complete formal discovery, nor the lack of "extensive discovery" will preclude approval of a settlement.  *Id.* at *22.  It is, instead, "enough for the Parties to

---

[50] Lipsky Dec. ¶¶ 7-11.
[51] Lipsky Dec. ¶ 10.

have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement." *Id.* (internal quotations omitted).

As detailed above, the parties meet this standard. The Class obtained meaningful amounts of data, including payroll, time and financial records, and other relevant information through formal discovery.[52] Counsel, with Plaintiff and the Class Representatives' assistance, investigated their claims and the facts underlying them both prior to and after filing the Complaint.[53] The Class also performed detailed damages calculations based on the data that Defendants provided. In addition, the Parties engaged in arms'-length negotiations and multiple day-long mediations with a neutral third-party mediator, during which they engaged in a vigorous exchange regarding their respective claims and defenses.[54] The parties were thus well-equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanges extensive information pertaining to the identities of class members and to defendant's time and pay practices and where counsel's negotiations, while "cooperative" had "been in no way collusive"); *Campos v. Goode*, No. 10-cv-0224 (DCF), 2010 U.S. Dist. LEXIS 13913, at *3 (S.D.N.Y. Nov. 29, 2010) (participation in mediation with experienced mediator is an indication that settlement is non-collusive). This factor favors preliminary approval.

        4.       The Class Would Face Real Risks If the Case Proceeded (*Grinnell* Factors 4-5)

Although the Class Members believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships*

---

[52] Lipsky Dec. ¶¶ 7-10.
[53] *Id.* ¶¶ 4-5.
[54] *Id.*

*Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). A trial on the merits would involve risks for the Class as to both liability and damages. They would, for example, have to overcome Defendant's good faith defense, and the Class would have to prove they were not compensated for all hours worked and they were not provided with the NYLL 195.1 Notice. While the Class believes they could ultimately establish both liability and damages, this would require significant factual development. Class Counsel are experienced and realistic, and understand the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. These factors favor approval.

     5.     Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of maintaining class certification through trial is also present. If this matter proceeds, Defendants may have moved for decertification, which would require another round of extensive briefing. If their motion was denied, they would likely seek permission to file an interlocutory appeal under Rule 23(f). Risk, expense, and delay permeate such a process. But settlement eliminates this risk, expense, and delay. This factor favors preliminary approval.

     6.     Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

Defendants' ability to withstand a greater judgment is unclear. Even if they could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that

the settlement is unfair." *Frank*, 228 F.R.D. at 186. This factor favors approval.

7.     The Settlement Fund Is Reasonable In Light of the Best Possible Recovery and the Attendant Litigation Risks (*Grinnell* Factors 8-9).

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Indeed, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2; *Officers for Justice*, 688 F.2d at 628 ("a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair").

The $450,000.00 settlement fund represents a good value given the attendant risks of litigation and it provides the Named Plaintiff, Class Representatives and Settlement Class Members with a substantial recovery.[55] This is true even though recovery could be greater if they succeeded on all claims at trial and survived an appeal.

At bottom, the *Grinnell* factors weigh heavily in favor of issuing preliminary approval of the Settlement. This Court should preliminarily approve the Settlement.

V.     THE COURT HAS ALREADY GRANTED CLASS CERTIFICATION AND APPOINTED PLAINTIFF'S COUNSEL AS CLASS COUNSEL

The Court need not provisionally certify the settlement class, as the Court has

---

[55] Lipsky Dec. ¶ 10.

already granted class certification under Rule 23(a) and (b)(3) of the Class Members. The Court has likewise already appointed Plaintiff's Counsel as Class Counsel under Rule 23(g).[56]

## VI. THE COURT SHOULD APPROVE THE PROPOSED NOTICE AND CLAIM FORM

The proposed Notice and Claim Form, which are Exhibits A and B to the Settlement Agreement, satisfy due process and conform to Rule 23(c)(2)(B)'s requirements. Under this Rule, the notice must provide:

> [T]he best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice and Claim Form satisfy these requirements. They also describe the terms of the settlement, set forth the minimum amount each Class Member will each receive, inform the Class about the allocation of attorneys' fees, the service awards, Plaintiff's individual settlement, and provides specific information regarding the date, time, and place of the final approval hearing. The detailed Notice and Claim Form therefore fully comply with the requirements of Rule 23(c)(2)(b). *See Silver v. 31 Great*

---

[56] Dkt. No. 29.

*Jones Rest.*, No. 11-cv-7442 (KMW) (DCF), 2013 U.S. Dist. LEXIS 7821, at *9-10 (S.D.N.Y. Jan. 4, 2013) ("Proposed Notice satisfies these requirements by informing class members of the terms of the settlement, informing them of the allocation of fees, and providing specific information regarding the final approval hearing"); *In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally")..

VII.    THE COURT SHOULD SCHEDULE A FINAL FAIRNESS HEARING

The Class has demonstrated their entitlement to preliminary approval of the proposed Settlement.  Accordingly, following adequate notice to the Class Members, a hearing must be held on the proposed Settlement.  *See* Manual for Complex Litigation (4th Ed.) at §§ 21.633, 21.634, pp. 321-22.  The Class therefore requests the Court enter an Order of Preliminary Approval that, *inter alia*, schedules a final fairness hearing for the final approval of the settlement, and setting a cut-off date for Class Members to object or "opt out."  The final fairness hearing should be scheduled now so the date can be disclosed in the Notice.

VIII.    THE CLASS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT

The Class will seek approval of the settlement of the FLSA claims with their final approval motion.  The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns. *See McMahon v. Olivier Cheng Catering & Events*, No. 08-cv-8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at *15 (S.D.N.Y. Mar. 3, 2010) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23

settlement."). When the Class files their motion for final approval of the settlement, they will seek approval of the FLSA settlement.

CONCLUSION

For the foregoing reasons, the parties respectfully ask the Court to (1) preliminarily approve the class-wide settlement; (2) schedule a final fairness hearing; and (3) approve the Settlement Notice and Claim Form and direct their distribution.


Dated:  June 30, 2014
     New York, New York

Respectfully submitted,
BRONSON LIPSKY LLP

By:  s/ Douglas B. Lipsky
Douglas B. Lipsky
630 Third Avenue, Fifth Floor
New York, New York 10017

*Attorneys for Plaintiff Spencer and the Class Members*